2024 IL App (1st) 232418-U

No. 1-23-2418B

Filed March 26, 2024

Fourth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 5852 |
| | ) | |
| LORENZO THOMAS, | ) | Honorable |
| | ) | Neera Walsh |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

*Held*: The circuit court had authority to hear the State's petition for detention when the defendant, held under a prior bond order, sought review of conditions of pretrial release pursuant to newly effective law. The State met its burden to show that the defendant poses a real and present threat to public safety and no conditions of release would mitigate the threat.

I. BACKGROUND

Lorenzo Thomas was charged with aggravated criminal sexual assault and other related offenses in May 2023. He was held under a $100,000 bond, which required him to deposit $10,000 to be released with the additional condition of electronic monitoring. Thomas was unable to post

that amount and remained in custody. On November 30, 2023, Thomas filed a "Petition to Remove a Financial Condition of Pretrial Release." His petition sought removal of the requirement to post a monetary bond pursuant to statutory amendments that have come to be commonly known as the Pretrial Fairness Act (Act), which went into effect in September 2023.[1]

¶ 4        Thomas appeared before the circuit court the same day for a hearing on his petition. At the same hearing, the State filed a petition for pretrial detention. Upon recognizing the opposing petitions, the court addressed Thomas as follows:

"Currently, the defendant has a bond of $100,000 meaning he needs to post $10,000 in cash to be able to be released and we can go forward with the detention hearing. The choices are release without conditions, release with conditions or detain. I just want to make sure the defendant understands that. Do you understand, sir, if we go ahead with this hearing and you're detained you're not going to be able to post. Do you understand that?"

Thomas replied that he understood and did not object to proceeding with the hearing.

¶ 5        The State proffered that in the late afternoon of May 3, 2023, Thomas lured a woman to an apartment where she had come to purchase marijuana from Harris, Thomas's brother and codefendant.[2] Upon taking her to a second floor landing, Thomas directed her to wait. Moments later, Harris appeared and pointed a semiautomatic handgun at the victim. Over her protests, Harris ordered her to enter the apartment. Once inside, Harris ordered the victim to undress. She complied, removing her clothing from the waist down. Harris handed the gun to Thomas, who was posted outside the door, telling him to stand guard. Harris proceeded to sexually assault the victim.

---

[1]The statutory amendments regarding pretrial release made by Public Acts 101-652, § 10-225 and 102-1104, § 70 (eff. Jan. 1, 2023) have no official name but have been referred to informally as the either the SAFE-T Act or Pretrial Fairness Act. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4, n1. Our supreme court lifted a stay imposed by a lower court and set the effective date as September 18, 2023. *Id.* ¶ 52.

[2]The record does not make clear whether Harris is a first or last name.

Afterward, Harris retrieved the gun from Thomas and gave Thomas a separate handgun. Then, both Harris and Thomas pointed guns at the victim, who remained unclothed from the waist down. They forced her, on video, to state that she came to the apartment to have sexual intercourse. After she dressed, Thomas escorted the victim outside. Harris and Thomas took the victim's belongings and drove off in her car. The victim was able to call 911 and report the incident. Responding police officers located the vehicle and detained both Harris and Thomas after observing them running in a nearby alley. The victim identified both in a show up.

¶ 6       The State argued that, based on the facts proffered, Thomas poses a real and present threat to public safety and no conditions of release would mitigate that threat. The State noted that the offenses occurred in Thomas's own home where he sought to remain upon release.

¶ 7       Defense counsel stated that Thomas is 17 years old and was 16 at the time of the offenses he is alleged to have committed. He was being held at the Juvenile Detention Center and was reported to be abiding by the facilities' rules. Regarding the charged offenses, counsel indicated that the victim first reported a robbery and only alleged a sexual assault later at a police station. No firearms were recovered. Evidence was lacking to prove Thomas's accountability for the sexual assault, according to counsel, since nothing demonstrated Thomas knew Harris was going to sexually assault the victim. In addition, counsel challenged whether Thomas had "lured" the victim to the apartment, arguing instead that the proffer indicated he only appeared after the victim had entered and he was told to stand guard. But for the aggravated criminal sexual assault charge, counsel submitted, Thomas would not be automatically transferred from juvenile court and all his other charges are probationable.

¶ 8       Thomas did not pose a threat, counsel argued, because Harris, who had been ordered detained, was the "ringleader" and would not be able to influence Thomas. Nonetheless, counsel

suggested electronic monitoring, curfew, and any other conditions would mitigate any risks Thomas posed.

¶ 9        The court observed that counsel arguments regarding Thomas's involvement in the sexual assault were more relevant for trial. The court then added:

> "I will note, also, that you indicate that he's been in the juvenile temporary detention center for almost seven months and he's only had two infractions. I don't think that's really a positive point there especially since one of them was a fight."

¶ 10       Turning to the State's detention petition, the court continued:

> "As far what is presented here today the Court finds as follows: that the State has shown by clear and convincing evidence that the proof is evident or the presumption great that the defendant committed an eligible offense under the statute of aggravated kidnapping, aggravated criminal sexual assault, armed robbery which are forcible felonies."

> "the defendant poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case, to wit, that he held a firearm, acted as a lookout while his codefendant sexually assaulted the victim, took the victim's personal property or was present when it was taken and that he fled in the victim's car, along with his codefendant."

The court then remarked:

> "the Court finds that based on those reasons there are no conditions or combination of conditions as set forth in the statute that could mitigate the real and present threat to the safety of any person or persons or the community based on the specific articulable facts that I've laid out already and least restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community based on the specific

articulable facts that I've laid out and the nature of what happened and how the defendant fled afterwards, also, again, taking this personal property of the victim in his case and therefore, the defendant is to be detained."

¶ 11 The court entered a written order that Thomas be detained pending trial. Regarding its finding that Thomas poses a real and present threat to the safety of the community, the court wrote, "held a firearm, acted as a look out while [codefendant] sexually assaulted victim and took victim's personal property and fled in victim's car." As for its finding that no conditions can mitigate the threat Thomas poses, the court wrote "See #2" on the preprinted form. In other words, the court indicated the same basis as it had written for the threat finding but incorporated those facts by reference without rewriting them.

¶ 12 Thomas filed a timely notice of appeal using the form approved for Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023) appeals. He indicated three grounds for relief. First, he checked the box beside the assertion that the State failed to prove that the proof is evident or the presumption great that he committed the offenses charged. The lines below read:

"Lorenzo is charged with aggravated criminal sexual assault through accountability. The State has presented NO evidence that Lorenzo knew or could have known that a crime was about to happen in a room where he was not present. There is NO evidence of any conversation between him and his co-defendant before the crime that signifies he had any knowledge a sexual assault was about to take place." (Emphasis in original.)

¶ 13 Second, Thomas checked the box asserting that the state failed to prove he poses a threat. In support, the lines below state:

"Lorenzo is currently 17 years old. He has no criminal background, he is an intelligent child who needs to be enrolled in school. He was not the leader of this alleged offense, he

was following the lead of his older brother. His older brother is now incarcerated and will have no control over him, therefore making Lorenzo no threat at all to anyone."

¶ 14 Finally, Thomas checked the box to assert that the State failed to prove that no conditions of release would protect the community or prevent his willful flight. The lines that follow read:

"Lorenzo is 17 years old, he is not a flight risk, he will stay with his family and obtain his education. There is no reason whatsoever that electronic monitoring or pre-trial release could not mitigate any danger if there was in fact any danger to begin with."

¶ 15 Subsequently, Thomas filed a memorandum in accordance with Rule 604(h). In his memorandum, Thomas first argues that the State's petition for detention was untimely, depriving the circuit court of authority to hear and grant it. Second, Thomas argues that the State failed to meet its burden of proof that he poses a threat and that no conditions could mitigate that threat. The State filed a response arguing that Thomas forfeited the timeliness issue by failing to raise it in the trial court and the petition was nevertheless timely. The State also contends that it met its burden of proof for the court to order Thomas detained.

¶ 16                                                    II. ANALYSIS

¶ 17 The State argues that Thomas forfeited his claim that the State's petition was untimely by failing to raise the issue in the circuit court. Recognizing that he did not challenge the State's ability to file a petition to detain him, Thomas requests that we review the issue under plain error or consider it couched as a claim of ineffective assistance of counsel.

¶ 18 The Act abolished monetary bail. 725 ILCS 5/110-1.5 (West 2022). But when the Act took effect, some defendants, like Thomas, remained detained under orders conditioning their release upon the posting of a monetary deposit. Such defendants may choose to remain subject to the prior bond order. *People v. Rios*, 2023 IL App (5th) 230724, ¶ 16. But if the defendant elects to be

considered for release under the Act, courts have generally held that the State may file a responding petition to detain. See *People v. Jones*, 2023 IL App (4th) 230837, ¶ 24; *People v. Gray*, 2023 IL App (3d) 230435, ¶ 15; see also *People v. Haisely*, 2024 IL App (1st) 232163, ¶ 22 (finding that the 21-day limit had not yet run when defendant remained in custody on order requiring the posting of a monetary bond). While we acknowledge that some panels of this court have decided differently (see, *e.g.*, *People v. Brown*, 2023 IL App (1st) 231980), we continue to hold that "the State may petition for the denial of pretrial release of defendants who were ordered released on bond but were still detained when the Act went into effect." *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 8. Accordingly, we find no error in the court hearing the State's petition to detain in this case.

¶ 19   In addition, Thomas not only failed to object but affirmatively acceded to the procedures. The court addressed him personally and explained in plain terms the potential consequences of going forward. "It is well settled that a party cannot acquiesce to the manner in which the trial court proceeds and later claim on appeal that the trial court's actions constituted error." *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 60.

¶ 20   We turn to Thomas's argument that the State failed to prove that he poses a safety threat and that no conditions of release could mitigate any threat he poses. Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code) as amended by the Act. *People v. Morales*, 2023 IL App (2d) 230334, ¶ 4. Under the Code, all persons charged with an offense are eligible for release before conviction. 725 ILCS 5/110-2(a) (West 2022). The circuit court may deny pretrial release upon the State's filing of a verified petition and after affording the defendant a hearing on the matter. 725 ILCS 5/110-6.1(a) (West 2022). At such a hearing, the State bears the burden to prove three propositions by clear and convincing evidence: (1) the presumption is great

or the proof evident that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific and articulable facts of the case, and (3) no condition or combination of conditions can mitigate the threat the defendant poses, or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022).

¶ 21      Although different panels of the appellate court have disagreed on the standard of review that applies to pretrial detention orders (see *People v. Lee*, 2024 IL App (1st) 232137, ¶ 21 (observing that abuse of discretion, manifest weight of the evidence, and *de novo* have been applied)), we maintain that the court's factual findings should only be reversed if against the manifest weight of the evidence and the court's ultimate decision regarding detention or conditions of release reviewed for an abuse of discretion. See *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13 (applying this "twofold" standard). It has been suggested that the trial court's finding on the third factual proposition—whether conditions exist that would mitigate the threat a defendant poses—should be reviewed for an abuse of discretion. See *Whitaker*, 2024 IL App (1st) 232009, ¶ 63 ("The final proposition *** involves a trial judge's reasoning and opinion—the trial court must exercise discretion in determining whether any less restrictive means will mitigate the threat a defendant poses to a person or the community."). However, we believe that distinction would not affect our decision in this case and the two standards nonetheless require a similar finding on appeal for reversal. "A finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." (Internal quotation marks omitted.) *People v. Chatman*, 2024 IL 129133, ¶ 34. "An abuse of discretion occurs where the circuit court's decision is arbitrary, unreasonable,

or fanciful or where no reasonable person would have taken the position adopted by the circuit court." *People v. Heineman*, 2023 IL 127854, ¶ 59.

¶ 22        Here, Thomas contends that the State failed to prove that he poses a threat to the community, as the trial court found. He submits that his brother, Harris, was the principal actor in the charged crimes and the State's proffer shows no evidence that he had any knowledge of the sexual assault "until it ended." Further, the proffer showed that Harris had influence over Thomas, so "[o]utside the influence of his brother who is detained, [Thomas] is not a threat to the safety of anyone."

¶ 23        We disagree that the State failed to prove that Thomas poses a threat to public safety. Although he may not have been the principal actor in the sexual assault, the proffer demonstrates evidence that, if established at trial, would be sufficient to prove Thomas guilty for his accountability in the offense. The proffer lacked direct evidence to show Thomas was aware that Harris would sexually assault the victim, but Thomas's knowledge could be inferred from the circumstances. That aside, Thomas must have been aware by the time he and Harris, while pointing guns at her, made the semi-nude victim state that she came to the apartment to have sexual intercourse. In our view, this was closely connected to the assault. In addition, Thomas clearly attached himself to Harris's criminal acts and continued to willingly take part. Nothing suggested that Thomas protested, attempted to stop Harris, or withdrew from the situation, despite every apparent ability to do so.

¶ 24        We also reject that Harris's incarceration means that Thomas poses no safety threat. The assertion is speculative and undermined by Thomas's demonstrated willingness to participate in criminal acts. As we noted, Thomas was not a mere unwitting lookout. He actively participated in a series of closely connected crimes. The mere fact that a defendant was an accountable accomplice

and not a principal does not preclude a finding that the defendant poses a risk to the community's safety. Accordingly, it is not clearly evident that Thomas poses no real and present danger, and the trial court could reasonably find, based on the facts presented in the State's proffer, that Thomas poses a risk to the safety of the community.

¶ 25 Next, Thomas argues that the State failed to prove that no conditions of release could mitigate the safety threat he poses. He notes that the State only proffered the factual allegations against him and gave a conclusory statement regarding conditions of release. The State did not address why electronic monitoring or a curfew, as his counsel suggested, would not be sufficient.

¶ 26 We observe that the State only offered a conclusory statement that no conditions of release could mitigate the threat Thomas poses. While greater explanation and additional evidence on this point may be preferable, and even necessary in some instances, we believe that the proffered facts of an offense alone may justify a finding that no conditions of release could mitigate the threat to safety posed by a defendant. In our view, that conclusion is warranted by the facts proffered in this case. Thomas demonstrated a willingness to commit crimes even in the place where he resided. He lured the victim to the apartment and stood as an armed guard while she was sexually assaulted. Thomas then took part in stealing her belongings and car, fleeing while leaving the victim in the vicinity of his home. Thus, in addition to the gravity of the crimes, Thomas displayed a brazen disregard for being caught. These circumstances militate against finding that, if released, a place exists for Thomas to reside that mitigates the threat he poses. Further, Thomas violated the rules of the Juvenile Detention Center by fighting. The trial court found that significant. So do we. The infraction shows that even under the controlled environment of the Juvenile Detention Center, in other words, the maximum pretrial conditions, Thomas engaged in violent behavior. Undoubtedly, Thomas would be subject to far less supervision if released.

¶ 27    For these reasons, we find that the court's conclusion that no conditions of release could mitigate the threat Thomas poses was not against the manifest weight of the evidence.

¶ 28                                III. CONCLUSION

¶ 29    Based on the foregoing, we affirm the judgment of the trial court.

¶ 30    Affirmed.