2024 IL App (1st) 232351

No. 1-23-2351B

Opinion filed April 25, 2024

Third Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Nos. 19 CR 12258 19 CR 12259 19 CR 13576 |
| CHRISTOPHER MANSOORI, | ) ) | |
| Defendant-Appellant. | ) ) ) | Honorable Michael J. Hogan, Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justice R. Van Tine concurred in the judgment and opinion.
Presiding Justice Reyes dissented, with opinion.

**OPINION**

¶ 1     Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act, amended article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)) and effected sweeping changes to the laws governing pretrial release and detention. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 & n.1 (noting neither "(SAFE-T) Act" nor "Pretrial Fairness Act" are "official" names but common shorthand for sequence of public acts). The circumstances

under which the State may file a petition for pretrial detention continue to be a subject of significant debate among the appellate districts and even among divisions in the First District. This case, which arises from defendant Christopher Mansoori's appeal of the trial court's order of detention pursuant to section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)), introduces a new wrinkle to that debate in the form of the State filing a petition for detention against an individual who is already detained—a scenario for which the Code prescribes a different procedure.

¶ 2    For the reasons that follow, we reverse the judgment of the trial court and remand for additional proceedings consistent with this opinion.

¶ 3                                 I. BACKGROUND

¶ 4    On September 5, 2019, the State charged defendant with two separate indictments under case numbers 19 CR 12258 and 19 CR 12259. Each indictment alleged two counts of domestic battery[1] against the same person that took place on April 22, 2019, and June 7, 2019, respectively. On October 7, 2019, the State subsequently charged defendant in a third indictment under case number 19 CR 13576, alleging two counts of armed violence, two counts of possession of a controlled substance, and two counts of aggravated unlawful use of a weapon, all of which occurred on August 2, 2019. Defendant was arrested on August 2, 2019. Details in the record are sparse, but defendant was released on bail in early August 2019, with a bail amount of $150,000-D. His bail was revoked in September 2019, after a hearing where the State claimed that defendant used a third party to attempt contact with the complaining witness in his domestic battery cases.[2] Defendant has remained detained since then.

---

[1]Due to a prior domestic battery conviction, these charges are a Class 4 felony. See 720 ILCS 5/12-3.2(b) (West 2018).

[2]The record does not contain any filings or transcripts from this time period.

¶ 5    On October 10, 2023, defendant filed a *pro se* "Motion for Bond Review and/or Reduction of Bail" that was captioned to encompass all three of defendant's cases. That motion invoked the prior version of section 110-6(f) of the Code, which governed the time frame in which a defendant must be tried for certain offenses following the revocation of bail. See 725 ILCS 5/110-6(f) (West 2020). In response, the State filed three petitions for pretrial detention, one for each case number. On October 16, 2023, the trial court held a hearing on defendant's motion and the three petitions for detention. As article 110 of the Code contemplates, the State made a factual proffer.

¶ 6    The State first claimed that, on one occasion, defendant allegedly struck his girlfriend about the body and stomped on her legs. On the other occasion, defendant allegedly struck his girlfriend in the head and pulled her hair. The State provided no other details for these offenses.

¶ 7    At the time of defendant's arrest on August 2, 2019, an order of protection involving an unspecified person, presumably defendant's girlfriend, had been issued but not served. The State did not recount the circumstances of defendant's arrest, but apparently his car played some role, as a search of defendant's car yielded an AR-15 rifle, for which defendant did not have a Firearm Owner's Identification card, and 19.5 grams of suspected cocaine. The State claimed that defendant was released on bond but was returned to custody because he was attempting to "contact the victim or harass the victim" through a third party. The State provided no details.

¶ 8    Regarding prior criminal history, the State claimed that defendant had misdemeanor convictions for domestic battery in 2011, assault in 2009, resisting a peace officer in 2007, and telephone harassment in 2015. Defendant also had four failures to appear.

¶ 9    Based on those facts, the State argued that the proof was evident or the presumption great that defendant committed the charged offenses, that defendant poses a threat to the safety of the community, and that defendant should be detained.

¶ 10    Defendant, representing himself *pro se*, proffered that the complaining witness lives in another state and that he had no contact with her for 40 days leading up to his arrest. Defendant also claimed that he had no felony convictions, and his written motion claimed that his failures to appear were the result of misunderstandings about his court dates or issues with transportation and were not willful.

¶ 11    In its oral ruling, the trial court found that proof was evident or the presumption was great that defendant committed the charged offenses and that defendant poses a real and present threat to the safety of any person or persons or the community based on specific articulable facts "in that defendant committed multiple acts of violence against another and has a prior history of violence and has an arrest for guns or drugs on a separate case as has been pointed out here."

¶ 12    The trial court then stated, "the Court finds that there [is] no condition or combination of conditions *** that can mitigate that risk." It made specific mention of the fact that, "[a]lthough the defendant indicates that the complaining witness in at least one of the cases is no longer in the State of Illinois, that does not mean that they can't be in the State of Illinois and, therefore, this defendant is to remain detained on these three cases."

¶ 13    The trial court's written orders for each case were virtually identical and contained little detail. Regarding whether the proof was evident or the presumption great, the order said, "Domestic battery bodily harm" or "armed violence/drugs and 2 domestic battery cases." In the space to address whether defendant poses a real and present threat to the safety of any person, the trial court wrote, "2 Domestic Battery and weapons/drug case AR 15 + coc[aine]." In the space provided for whether any conditions can mitigate the threat posed by defendant, despite the requirements of section 110-6.1(h)(1) (725 ILCS 5/110-6.1(h)(1) (West 2022)), the trial court wrote, "See above."

¶ 14    Defendant timely filed a notice of appeal.

¶ 15                              II. ANALYSIS

¶ 16    Defendant asks us to decide whether the State proved by clear and convincing evidence that no condition or combination of conditions can mitigate the threat posed by defendant. This ostensibly straightforward question presents a conundrum of appellate review where answering that question would require us to accept that the Code operates in a way that we have repeatedly said it does not.

¶ 17    This appeal arises out of the trial court granting the State's petitions for pretrial detention. Section 110-6.1(e) of the Code presumes that all defendants are eligible for pretrial release and places the burden of justifying pretrial detention by clear and convincing evidence on the State. *Id.* § 110-6.1(e). The State may file these petitions at a defendant's first appearance before a judge or within 21 days of his arrest and release. *Id.* § 110-6.1(c). To justify the pretrial detention of a defendant, the State must show by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case, and (3) no condition or combination of conditions found in section 110-10 of the Code can mitigate that real and present threat. *Id.* § 110-6.1(e)(1)-(3).

¶ 18    However, the Code prescribes a different procedure for individuals like defendant who are already detained. Defendant was originally released on bond but was then detained following a violation of his bail bond. For detained individuals, at every court date, the trial court must make a finding that "continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to

prevent the defendant's willful flight from prosecution." *Id.* § 110-6.1(i-5). Notably, this portion of the Code, unlike the portions dealing with petitions for detention, does not prescribe a quantum of evidence or place a burden of proof on any party. This determination also does not contemplate the filing of a petition for detention.

¶ 19 *People v. Casey*, 2024 IL App (3d) 230568, presents a moderately similar factual scenario. There, the trial court granted a petition for pretrial detention, and the defendant later filed a motion seeking his release. *Id.* ¶¶ 6-7. The trial court rejected that request and correctly applied section 110-6.1(i-5) of the Code, finding that continued detention was necessary. *Id.* ¶ 9. On appeal, the defendant argued that the State failed to meet its burden of proof contained in subsection (e), but we observed that the proper analysis was whether continued detention was necessary under subsection (i-5), which contains no burden of proof. *Id.* ¶ 13. We affirmed, holding that the trial court did not abuse its discretion in finding that continued detention was warranted. *Id.* ¶ 14.

¶ 20 The instant case differs slightly from *Casey*, and therein lies our conundrum. Like in *Casey*, the parties have presented us with an issue that is at odds with the procedure prescribed for detained individuals. But more importantly, the trial court's orders giving rise to this appeal were premised on a procedure at odds with the Code, namely that the trial court took up the State's petitions even though those petitions were untimely and where the Code provides a different procedure to follow.

¶ 21 This court has previously addressed the timeliness of petitions for pretrial detention when filed against those who were ordered released but remained in custody because they could not satisfy some requirement of their release. *People v. Watkins-Romaine*, 2024 IL App (1st) 232479, ¶ 34; *People v. Brown*, 2023 IL App (1st) 231890, ¶ 13. In *Watkins-Romaine*, we strictly interpreted the timing requirements of section 110-6.1(c) of the Code and rejected three other

interpretations of that subsection that created unwritten exceptions that would allow the State to file petitions for detention at times outside of the limitations enumerated in the Code. *Watkins-Romaine*, 2024 IL App (1st) 232479, ¶¶ 34-48.

¶ 22     The trial court here entertained the State's petitions for detention, which were not filed at defendant's first appearance before a judge or within 21 days of his arrest and release. By the logic in *Brown* and *Watkins-Romaine*, the State's petitions here were not timely. Indeed, unlike those cases, defendant was not an individual who had been ordered released but remained in custody because he could not satisfy a condition of his release. Defendant's bail was revoked in 2019 because he allegedly attempted to contact the complaining witness through a third party. He was detained in the most literal sense of the word, though maybe not under the standard now enumerated in section 110-6.1(e) of the Code. 725 ILCS 5/110-6.1(e) (West 2022). Because the State's petitions were untimely and should not have been entertained by the trial court and because the Code requires a different procedure, we decline to answer the question of whether the State met its burden of proof.

¶ 23     The dissent disagrees with this analysis, and points instead to subsection 110-7.5(b) of the Code as justification for the State's petition for pretrial detention. Subsection 110-7.5(b) first states that "[o]n or after January 1, 2023, any person who remains in pretrial detention after having been ordered released with pretrial conditions, including the condition of depositing security, shall be entitled to a hearing under subsection (e) of Section 110-5." 725 ILCS 5/110-7.5(b) (West 2022). Section 110-5(e), consequently, provides for a hearing to determine the reasons for a defendant's continued detention and whether the conditions of release can be altered to ensure "the appearance

of a defendant as required, the safety of any other person, and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(e) (West 2022).

¶ 24    The second portion of subsection 110-7.5(b) states, "[o]n or after January 1, 2023, any person, not subject to subsection (b), who remains in pretrial detention and is eligible for detention under Section 110-6.1 shall be entitled to a hearing" according to a schedule based on the detainable offense with which they are charged. 725 ILCS 5/110-7.5(b) (West 2022).

¶ 25    The only hearing referenced in subsection 110-7.5(b) is the aforementioned subsection 110-5(e) hearing. The dissent's position that the phrase "any person, not subject to subsection (b), who remains in pretrial detention and is eligible for detention under Section 110-6.1 shall be entitled to a hearing" refers to a section 110-6.1 detention hearing makes little sense within the context of the Code. The clause in question refers to the individual at issue as one who "remains in pretrial detention." *Id*. A hearing on the subject of pretrial detention for an individual that the statute recognizes to already be detained is nothing if not redundant. A more common sense reading of this section is that the legislature intended to afford individuals detained prior to the effective date of the amended Code, such as defendant here, an opportunity to re-visit whether their detention is necessary.

¶ 26    Additionally, if the "hearing" referenced in this second part of subsection 110-7.5(b) was a detention hearing, it would be odd, to say the least, that a detained defendant would be "entitled" to a proceeding at which the State seeks to justify his detention. It makes more sense to think that a detained defendant is entitled to a hearing to determine if changes can be made to his detention status, especially given that this hearing must take place within a set number of days after he files a motion for reconsideration of pretrial release conditions. *Id*.

¶ 27 The dissent also seizes upon the language that the aforementioned hearing is for any defendant "who is eligible for detention under Section 110-6.1," interpreting this to mean that they are eligible to have a petition for detention filed against them. *Infra* ¶ 42. But the more sensible interpretation once again looks to the context of the Code. Every defendant is presumed eligible for pretrial release, and only a subset of defendants charged with specific offenses are ever eligible for detention. 725 ILCS 5/110-6.1(a) (West 2022). Thus, when determining which detained individuals are entitled to the hearing contemplated by subsection 110-7.5(b)—a hearing to determine if they may be released—the qualifier is those eligible for detention under section 110-6.1. 725 ILCS 5/110-7.5(b) (West 2022). This is because a hearing would be superfluous for those who are not eligible for detention under the amended Code. 725 ILCS 5/110-6.1(a), (e) (West 2022). They must be released. *Id.*

¶ 28 Finally, the dissent also takes the position that subsection 110-6.1(i-5) does not apply because defendant was never detained pursuant to the detention scheme that now exists in section 110-6.1. *Infra* ¶ 43. But there is no magic to the phrase "pretrial detention." Pretrial detention is not new to our system of justice, whether it be detention resulting from the revocation of bail, "no bail" orders, or even those detained because they cannot satisfy a condition of their release. To say that subsection 110-6.1(i-5) does not apply to defendant because his detention was not the right *kind* of pretrial detention is fundamentally at odds with the plain language of the Code. If the legislature wished the amended Code to effectively "reset" the detention status of all defendants and to afford protections like subsection 110-6.1(i-5) only after a detention hearing under section 110-6.1 took place, it surely would have been explicit about such a sweeping change. More

importantly, section 110-7.5, which deals explicitly with those defendants whose cases straddle the prior versions of our bail provisions and the new amended Code, would not exist.

¶ 29    The question before the trial court, either on its own motion or prompted by defendant's request for a reduction in bail, should have been only whether defendant's "continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022).

¶ 30    We are cognizant that the timeliness of the State's petitions is not an issue before us. A fundamental principle of appellate review is, as the United States Supreme Court once said, that " '[courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties.' " *Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of rehearing *en banc*)).

¶ 31    "[A]s a general rule, '[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.' " *Id.* (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment, joined by Thomas, J.)).

¶ 32    However, as our supreme court has said, this is not an absolute rule and we may address unbriefed errors in limited instances where a clear error occurred. *People v. Givens*, 237 Ill. 2d 311, 325 (2010). In *Givens*, the question was whether the appellate court erred in reversing a defendant's conviction on the basis of ineffective assistance of counsel where that issue was not raised or briefed. *Id*. at 325-26. The supreme court reasoned that reviewing courts should refrain

from addressing unbriefed issues when it would transform the court's role from that of jurist to advocate. *Id*. at 328. But that is not the effect that our decision has here. We are not reversing and ordering defendant's release based on an unbriefed issue, advocating on behalf of one party or the other, or indeed, prejudicing the State in any way. Rather, our decision simply declines to sanction disregard of the procedure that the trial court is required to follow at each and every court date, and declines to endorse a procedure that is at odds with this division's precedent. *Watkins-Romaine*, 2024 IL App (1st) 232479, ¶ 34; *Brown*, 2023 IL App (1st) 231890, ¶ 13. Thus, while we typically should not address an issue not raised by the parties, we also cannot say that our rules of criminal procedure are contingent on the parties' acquiescence to them. Defendant was detained following the revocation of his bail. The Code instructs what should be done with individuals who are detained, and that procedure was not followed here. 725 ILCS 5/110-6.1(i-5) (West 2022).

¶ 33    Although the required finding in section 110-6.1(i-5) shares some commonalities with the burden the State must meet at an initial detention hearing, we elect not to decide whether defendant's continued detention was necessary. The most prudent course appears to be to remand this case so that the trial court can make the appropriate finding as required by the statute: whether defendant's continued detention is necessary under section 110-6.1(i-5) of the Code (*id.*). Upon remand, the trial court should hold a hearing and make the finding required by the statute. The dissent argues that principles of judicial economy make remand unnecessary because the required finding in subsection 110-6.1(i-5) is less stringent than the burden the State must meet at a detention hearing under subsection 110-6.1(e), which the trial court already found to be met. *Infra* ¶ 44. But in this particular instance, there would be no savings with respect to judicial economy.

The trial court is required to consider the necessity of continued detention at each and every court date, regardless of what we decide here. 725 ILCS 5/110-6.1(i-5) (West 2022).

¶ 34 Additionally, the record indicates that defendant's charges have been pending since September and October 2019. Defendant has been in custody for approximately 4½ years. The charges, domestic battery, possession of a controlled substance, aggravated unlawful use of a weapon, and armed violence, are not complicated—defendant is accused of committing a battery on two occasions against the same person and possessing a firearm and illegal narcotics. While the record offers no insight into why these cases remain unresolved or how the reasons for the delay might be apportioned, we believe it would behoove the parties to expedite the resolution of these matters.

¶ 35                           III. CONCLUSION

¶ 36 For the foregoing reasons, we reverse the trial court's order granting the State's petition for pretrial detention and remand for additional proceedings consistent with this opinion.

¶ 37 Reversed and remanded.

¶ 38 REYES, P.J., dissenting:

¶ 39 The majority finds that the State's detention petition was untimely and therefore reverses the trial court's decision to detain the defendant. I believe that both the majority's analysis and its interpretation of the relevant provisions of the Code are flawed and, accordingly, I must respectfully dissent.

¶ 40 First and foremost, the majority's decision to reverse the trial court's detention order based on timeliness is inappropriate where the defendant has not raised this issue, either on appeal or below, a fact which the majority acknowledges. *Supra* ¶ 30. See *People v. Givens*, 237 Ill. 2d 311,

323 (2010) ("Illinois law is well settled that other than for assessing subject matter jurisdiction, a reviewing court should not normally search the record for unargued and unbriefed reasons to *reverse* a trial court judgment." (Emphasis in original, internal quotation marks omitted.)). The majority, however, proceeds to ignore what it recognizes as "[a] fundamental principle of appellate review" (*supra* ¶ 30) and instead chooses to consider an unraised, unbriefed issue *sua sponte* and ultimately reverses on that issue. Its decision to do so is even more egregious where it suggests that its choice to address the issue "simply declines to sanction disregard of the procedure that the trial court is required to follow at each and every court date, and declines to endorse a procedure that is at odds with this division's precedent." *Id.* ¶ 32 (citing *People v. Watkins-Romaine*, 2024 IL App (1st) 232479; *People v. Brown*, 2023 IL App (1st) 231890); see also *id.* ¶ 16 (suggesting that resolving the issue raised on appeal "would require us to accept that the Code operates in a way that we have repeatedly said it does not"). The majority's framing of the issue in this way implies that the question of the Code's procedures is settled, which is far from the case, as I explain below. Given that the issue which the majority chooses to raise *sua sponte* is one subject to disagreement, its decision to rest its opinion on this basis is therefore problematic. See *Givens*, 237 Ill. 2d at 326 (where "the issue identified *sua sponte* by the appellate court did not amount to obvious error controlled by clear precedent," the appellate court erred in addressing the issue).

¶ 41    Even if this issue was properly before us, however, I would disagree with the majority's analysis on the matter. As noted by the majority, the defendant in the instant case was arrested prior to the effective date of the amendments to the Code and was ordered released with pretrial conditions, but his bail was revoked in 2019 and he has remained in custody since then. In October 2023, defendant filed a motion for bond review, and in response, the State filed petitions for pretrial

detention under section 110-6.1 of the Code. Defendant, therefore, falls within the provisions of section 110-7.5 which provide that "[o]n or after January 1, 2023, any person, *** who remains in pretrial detention and is eligible for detention under Section 110-6.1 shall be entitled to a hearing" within 90 days of his motion for reconsideration of pretrial release conditions. 725 ILCS 5/110-7.5(b)(2) (West 2022).

¶ 42       The only way in which a defendant may be eligible for detention under section 110-6.1 is through the filing of a petition for pretrial detention, at which the State bears the burden of establishing the defendant's eligibility by clear and convincing evidence. *Id.* § 110-6.1(e). Importantly, section 110-7.5 is not limited to defendants "who *have been found eligible* for detention under Section 110-6.1," which would suggest a prior pretrial detention hearing; instead, it governs any defendant "who *is* eligible for detention under Section 110-6.1" (emphasis added) (*id.* § 110-7.5(b)), suggesting that the State may file its pretrial detention hearing in connection with the defendant's motion for reconsideration of pretrial release conditions, as occurred in the instant case. The majority disagrees with this interpretation, asserting that "[t]he only hearing referenced in subsection 110-7.5(b)" is a hearing under section 110-5(e), in circumstances which are not applicable here. *Supra* ¶ 25. The subsection, however, also expressly contemplates a defendant filing a "motion for reconsideration of pretrial release conditions" and a hearing on the matter, a fact which the majority seems to recognize. 725 ILCS 5/110-7.5(b)(1) (West 2022). I agree with the majority's position that, at this hearing, the defendant is entitled to an opportunity to revisit the terms of his detention status; to the extent that the majority suggests otherwise, such a reading reflects a misunderstanding of my position. In my view, however, the State is also

entitled to file a pretrial detention petition in response, especially where the section providing for the hearing expressly references such a petition.

¶ 43 I also disagree with the majority's reliance on section 110-6.1(i-5), which concerns defendants who are already detained pursuant to section 110-6.1. *Id.* § 110-6.1(i-5). Defendant, however, was never detained pursuant to section 110-6.1—he is in custody due to the revocation of his pretrial release, which is governed by section 110-6. See *id.* § 110-6. The majority's analysis of section 110-6.1(i-5) is therefore inapplicable to the instant case. The majority claims that "there is no magic to the phrase 'pretrial detention,' " suggesting that section 110-6.1(i-5) applies to all forms of pretrial detention, "whether it be detention resulting from the revocation of bail, 'no bail' orders, or even those detained because they cannot satisfy a condition of their release." *Supra* ¶ 28. This is simply not an accurate statement of the law, however; each of those situations is subject to specific statutes and procedures, which are not always identical. See 725 ILCS 5/110-6 (West 2022) (governing revocation of pretrial release); 110-6.1 (governing denial of pretrial release); 110-5(e) (governing defendants who have been unable to satisfy conditions of pretrial release).

¶ 44 Furthermore, even if the majority's position concerning the applicability of section 110-6.1(i-5) was correct, such a result would not necessitate reversal. As the majority notes, section 110-6.1(i-5) does not set forth a quantum of evidence necessary to find continued detention appropriate. See also *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13 (noting that a section 110-6.1(i-5) determination does not require the same "clear and convincing" proof as in the initial section 110-6.1 detention hearing). There is no indication, however, that the decision as to continued detention is subject to *stricter* requirements than are necessary in an initial detention

hearing under section 110-6.1. By conducting a hearing pursuant to the requirements of section 110-6.1, then, the trial court in the instant case necessarily found that the State had satisfied a more stringent standard of proof than would be otherwise required. Reversing the trial court's decision and remanding for the trial court to hold a hearing at which the State is required to make *less* of a showing than it already has would be an unnecessary use of judicial time and resources.

¶ 45 As a final matter, I must note that the majority's decision appears intended to reaffirm its position as to the timing requirements of section 110-6.1 and its applicability to defendants who remained in custody at the time the new provisions of the Code became effective. While the majority understandably relies on its own prior decisions on the matter (*Brown* and *Watkins-Romaine*), other appellate courts considering this question have overwhelmingly come to the opposite conclusion, with near unanimity about the ability of the State to seek pretrial detention, at a minimum, where the defendant has sought to reopen the conditions of his release. See, *e.g.*, *People v. McDonald*, 2024 IL App (1st) 232414, ¶ 28; *People v. Davidson*, 2023 IL App (2d) 230344, ¶ 18; *People v. Gray*, 2023 IL App (3d) 230435, ¶ 15; *People v. Jones*, 2023 IL App (4th) 230837, ¶ 24; *People v. O'Neal*, 2024 IL App (5th) 231111, ¶ 18. In fact, other than *Brown* and *Watkins-Romaine*, only one case has adopted the majority's approach, and several courts have expressly declined to follow the reasoning set forth in *Brown*. See *People v. Thomas*, 2024 IL App (1st) 232418-U, ¶ 18; *People v. Stone*, 2024 IL App (1st) 232359-U, ¶ 20; *McDonald*, 2024 IL App (1st) 232414, ¶ 27; *People v. Haisley*, 2024 IL App (1st) 232163, ¶ 20; *People v. Watson*, 2024 IL App (1st) 232143-U, ¶ 19. But see *People v. Watson*, 2024 IL App (1st) 240207-U, ¶ 17 (in a divided decision, "chang[ing] its mind" and declining to follow its prior decision in *McDonald*, which had been decided less than three weeks earlier). Even the Fifth District, which

interprets the timing requirements of section 110-6.1 similarly, appears to contemplate the possibility of pretrial detention where the defendant has chosen to reopen the conditions of his pretrial release. See, *e.g.*, *People v. Rios*, 2023 IL App (5th) 230724, ¶¶ 16-17 (finding that a defendant may elect to stay in detention under the previously-set conditions instead of requesting a hearing under section 110-5(e), "after which they might be detained without any possibility of pretrial release"); *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 22 (same); *People v. Swan*, 2023 IL App (5th) 230766, ¶ 24 (same). While a full discussion of the timing requirements of section 110-6.1 is beyond the scope of the decision in this matter, to the extent that the majority's decision may be read as further support for its position as to the timeliness of section 110-6.1 petitions for pretrial detention, I must make clear that I do not agree with this position.

¶ 46      As the majority's *sua sponte* decision to reverse and remand the trial court's detention order based on timeliness is inappropriate for a variety of reasons, as set forth above, I must respectfully dissent.

***People v. Mansoori*, 2024 IL App (1st) 232351**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 19-CR-12258, 19-CR-12259, 19-CR-13576; the Hon. Michael J. Hogan, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Benjamin Wimmer, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Liv K. Grewal, Assistant State's Attorney, of counsel), for the People. |