2024 IL App (1st) 240826-U

No. 1-24-0826B

Order filed August 8, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 23 C 550678 |
| vs. | ) | |
| | ) | |
| RAYMOND STEWART, | ) | Honorable |
| | ) | Steven J. Rosenblum, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the circuit court's order, where the evidence demonstrated that Stewart's continued detention was necessary to avoid a real and present threat to the safety of any persons or the community, based on the specific articulable facts of the case.

¶ 2    Defendant Raymond Stewart appeals the circuit court's order continuing his detention. Stewart was arrested and charged after Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act), was enacted.[1] For the following reasons, we affirm.

---

[1]"The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1. *Raoul* lifted the stay of pretrial release provisions and set an effective date of September 18, 2023. *Id.* ¶ 52; Pub. Acts 101-652, § 10-255, 102 1104, § 70 (eff. Jan. 1, 2023).

¶ 3                                    I. BACKGROUND

¶ 4        Stewart was arrested following a November 24, 2023 incident in which he was involved in a traffic collision. At approximately 5:45 a.m., police officers responded to a vehicle collision at 101st Street and Kedzie Avenue in Evergreen Park. Upon their arrival, officers observed Stewart in the driver's seat of a Jeep Patriot that had struck a tree on South Kedzie. Stewart was attempting to climb out of the smoking vehicle, and officers observed a handgun on the driver's side floorboard. At the scene, officers witnessed Stewart take two pill bottles from his jacket pocket and attempt to hide them in his t-shirt. They recovered those bottles, which were filled with multicolored pills tied in plastic baggies. Stewart suffered injuries and was taken by ambulance to a hospital, where he was found to have two plastic bags containing narcotics concealed within his rectum.

¶ 5        Stewart was subsequently charged with a combined 12 counts of armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2022)), armed violence (702 ILCS 5/33A-2(a) (West 2022)), methamphetamine delivery (720 ILCS 646/55(a)(1) (West 2022)), manufacture or delivery of cocaine (720 ILCS 570/401(c)(2) (West 2022)), unlawful possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2022)), aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1) (West 2022)), possession of amphetamine or fentanyl (720 ILCS 570/401(d)(iii) (West 2022)), possession of methamphetamine (720 ILCS 646/60(a) (West 2022)), and unlawful possession of a controlled or counterfeit substance (PCS) (720 ILCS 570/402(c) (West 2022)). The State filed a detention petition on November 25, 2023, pursuant to sections 5/110-2 and 5/110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-2, 110-6.1 (West 2022)). The State alleged the proof is evident or the presumption great that Stewart committed AHC, that he poses a real and present threat to the safety of any person(s) or the community, and that no conditions can mitigate that risk. Stewart remained hospitalized for several

2

days and upon his release, the court held a virtual detention hearing on December 8, 2023.

¶ 6        Following the hearing, the court entered a written detention order using a template form that lists the requisite three propositions preprinted on the form—(1) the proof is evident or the presumption great that the defendant has committed a detention eligible offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific articulable facts of the case, and (3) no condition or combination of conditions of release can mitigate that threat. On lines provided below each proposition, the court wrote specific facts from the case that it relied upon to reach its findings. Beside the preprinted finding for the first proposition, the court wrote, "Armed Habitual Criminal. Non-Probationable." For the second proposition, the court wrote, "Was involved in a one car collision while armed with a loaded weapon [and] various types of controlled substances, ready to be distributed. Has multiple prior felony convictions including attempt murder 2015, UUW felon 2015, Agg. Batt. 2004; UUW felon 2012." For the third proposition, the court wrote: "[Stewart] has been convicted of felonies from 2003 to 2021 escalating in seriousness up to attempt murder [and] was caught with a loaded gun while having various drugs ready for distribution." The order indicates that Stewart is to be detained pending trial. Steward did not appeal this order.

¶ 7        On December 28, 2023, Stewart filed a "motion for pretrial release," requesting that the court grant him pretrial release under the Act. On January 11, 2024, Stewart's motion was denied.

¶ 8        The court held a hearing reviewing Stewart's continued detention on April 12, 2024.[2] Defense counsel highlighted that the 39-year-old Stewart is the father of six children and is a lifelong resident of Illinois. Counsel argued there was a change of circumstances warranting release, as Stewart had surgery after he was taken into custody and had an infection. Stewart

_____

[2]While there is no further motion for pretrial release included in the record on appeal, defense counsel informed the trial court that they were present for a hearing on a motion for pretrial release.

additionally had two fractured knees, and ankle and pelvis "problems," all resulting from the November 24, 2023 incident. Stewart sought house arrest so he could use his insurance to attain medical assistance at a different hospital. Additionally, counsel argued that if Stewart were released on house arrest, he would serve it in Dolton where he would have transportation to and from court and would comply with any other conditions the court set. The court inquired if "the only difference is that he has been in and they have been caring for him over at the hospital and he just wants a different hospital?" Counsel agreed that he wanted a different hospital, but also that he has an infection and needs to start "working on therapy to get back on his feet."

¶ 9        In response, the State proffered the facts of the November 24, 2023 traffic collision and aftermath. The State detailed the weapon found in the vehicle, the gun holster found nearby, the pill bottles full of drugs (suspect MDMA) that Stewart attempted to conceal in his t-shirt, and the plastic bags of illicit drugs the medical staff removed from Stewart's rectum at the hospital. Additionally, U.S. currency totaling over $1000 was recovered. The State explained that Stewart had a lengthy background: a 2021 Class 4 PCS for which he received 18 months imprisonment; a 2015 UUWF for which he received a 10 year sentence; a Class 4 aggravated assault for which he received a three year sentence; a 2011 conviction for manufacture/delivery, for which he received a four year sentence, to be served concurrent to a three-and-a-half year UUWF sentence; a 2004 aggravated battery with great bodily harm, for which he received a five year sentence; and a 2003 PCS for which he received a one year sentence. At the time of the incident, Stewart also had pending misdemeanors at the Markham courthouse for offenses that included resisting arrest, aggravated assault, and fleeing and alluding. Additionally, he had misdemeanor convictions for domestic battery (2010), resisting (2009), and possession of cannabis (2007), and he received supervision for a domestic battery in 2003. Further, Stewart had two prior failures to appear, and that, combined with the Class X AHC offense he is currently charged with, could contribute to a

potential flight risk.

¶ 10    In response, defense counsel noted that Stewart's pending misdemeanors at the Markham courthouse had been dismissed. Counsel argued that Stewart is not a flight risk, as his six children, mother, sister, and brother all live in the Cook County area and he has no immediate family anywhere else. Moreover, counsel argued that Stewart had successfully completed parole in September of 2023, which indicates he can follow rules and conditions.

¶ 11    The court held that, after considering counsel's motion and Stewart's injured status, it did not see a change in circumstances. The court noted that Stewart is suffering from injuries he received in the process of this offense—injuries he had when he appeared for his original detention hearing—and that nothing had changed except for Stewart receiving treatment at the jail. The court ultimately agreed with the original court that ordered Stewart detained, highlighting that Stewart is charged with a nonprobationable Class X offense and that the truth is evident and the presumption great that he was caught with a gun and drugs following the traffic collision. The court found that Stewart poses a real and present threat to the safety of persons, as indicated by the fact that he crashed the vehicle he was driving while he was on bond for a fleeing and alluding offense. Additionally, the court relied on Stewart's long criminal history which it noted included many violent crimes—aggravated assault, aggravated battery, great bodily harm, and two instances of domestic battery—and gun convictions. Finally, the court determined that no conditions could mitigate the threat Stewart poses, where he had narrowly missed violating the conditions of his parole on a prior felony conviction and had pending misdemeanors at the time of this offense. The court held that based on Stewart's criminal history, electronic monitoring (EM) would be insufficient to protect the public. The court considered that Stewart is presently in a wheelchair but noted that it did not know how long he would remain in the wheelchair and was "not willing to risk that to the public." Accordingly, the court denied Stewart's motion for pretrial release.

¶ 12       Stewart filed a timely notice of appeal pursuant to Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023)

¶ 13                                    II. ANALYSIS

¶ 14       On appeal, Stewart did not file a memorandum, choosing instead to stand on the arguments he made in his notice of appeal. See Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023). Utilizing the approved form from the Article VI Forms Appendix to the Illinois Supreme Court Rules (see Ill. S. Ct. Rs. Art. VI Forms Appendix R. 604(h)), Stewart's claims of error consists of two claims: (1) the State failed to prove by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat he poses, and (2) the court erred in its determination that no conditions would reasonably ensure Stewart's appearance for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor. Stewart supplied a very brief explanation of his argument in the blank space below these preprinted assertions—that because he only has one failure to appear and has multiple children in the community, there was no reason to believe he would not comply with the conditions of house arrest. While the form order does not specifically contain a "continued detention" section that can be checked, there is an "other" box on the form that allows for a more specific challenge. Stewart checked the "other" box and supplied the following argument, "original petition for pretrial detention states defendant had a conviction for attempted murder. This is incorrect, Defendant was charged, and case was later dismissed."[3] Despite entering in "April 12, 2024" as the date of order appealed, Stewart did not raise any argument concerning the court's April 12 determination that his continued detention was necessary.

¶ 15       The State filed a responsive memorandum, arguing that Stewart does not claim that the

---

[3]We decline to address this argument, where it is not properly before us in this appeal.

circuit court erred in finding that continued detention was necessary and only raises issues not properly before the court. In considering this appeal, this court has reviewed the following documents which were submitted under Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023): (1) Stewart's notice of appeal pursuant to the Act, (2) the supporting record, and (3) the State's memorandum in response to Stewart's notice of appeal.[4]

¶ 16        "Pretrial release is governed by section 110 of the Code as amended by the Act." *People v. Morales*, 2023 IL App (2d) 230334, ¶ 4 (citing 725 ILCS 5/110-1 et seq. (West 2022)). Pursuant to the Code, "it is presumed that a defendant is entitled to release on personal recognizance on the condition that the defendant shall attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release." 725 ILCS 5/110-2(a) (West 2022). Under the Code, all persons charged with an offense are eligible for pretrial release before conviction. *Id.* The court may deny pretrial release only upon a verified petition by the State and following a hearing. 725 ILCS 5/110-6.1(a) (West 2022). It is the State's burden to prove by clear and convincing evidence that (1) the presumption is great or the proof evident that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific and articulable facts of the case, and (3) no condition or combination of conditions can mitigate the threat the defendant poses, or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022). The standard "requires proof greater than a preponderance, but not quite approaching the criminal standard of beyond a reasonable doubt." *In re D.T.*, 212 Ill. 2d 347, 362 (2004).

---

[4]We note that the record was timely transmitted to the court but was not docketed until this court issued a *sua sponte* order on June 13, 2024, ordering the record to be filed *instanter*. Accordingly, the disposition date was extended for "good cause shown," as permitted by Illinois Supreme Court Rule 604(h)(8) (eff. Apr. 15, 2024).

¶ 17　　Where a defendant has previously been ordered detained, the "statute also imposes a continuing obligation for the court to assess whether continued detention is necessary." *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 21. In such cases, as here, the proper question before the court is whether continued detention is necessary "to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.5(i-5) (West 2022). In determining whether continued detention is appropriate, "the Code does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing." *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13.

¶ 18　　The required finding in section 110-6.1(i-5) does share some commonalities with the burden the State must meet at an initial detention hearing. *Mansoori*, 2024 IL App (1st) 232351, ¶ 33. However, "[n]otably, this portion of the Code, unlike the portions dealing with petitions for detention, does not prescribe a quantum of evidence or place a burden of proof on any party." *Id.* ¶ 18. "Rather than ask whether pretrial conditions can mitigate the threat posed by a defendant, it starts from the premise that detention was necessary to guard against that threat and asks whether anything has changed such that a defendant's detention is no longer warranted." *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14 (holding that "the finding required by section 110-6/1(i-5) is simply a less demanding standard than what is required at the detention hearing, though both are concerned with fundamentally the same question."). We review the circuit court's determination on continued detention for abuse of discretion. *Id.* ¶ 16; *People v. Casey*, 2024 IL App (3d) 230568, ¶¶ 11-13. A trial court abuses its discretion only when (1) its decision is arbitrary, fanciful, or unreasonable, or (2) no reasonable person would take the view adopted by the court. *People v. Towns*, 2020 IL App (1st) 171145, ¶ 44.

¶ 19    In this case, Stewart does not challenge what would have been the sole issue before the court on a continued detention hearing—namely, whether Stewart's continued detention was necessary to avoid a safety threat or prevent his willful flight. Therefore, Stewart has failed to put the matter before us for review. See *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22 (observing that appellate review under Rule 604(h) is limited to the arguments raised in the notice of appeal and, if filed, included in the appellant's memorandum). Nonetheless, the evidence proffered demonstrated that Stewart's continued detention is necessary to avoid the real and present threat he poses. The court found Stewart's injuries were present at the time of his initial detention hearing, and noted the only change in circumstance it observed was that Stewart wished to have follow-up medical care at a hospital of his own choosing. We find the facts proffered in this case support both the court's decision to deny Stewart's motion and its conclusion that continued detention was necessary. Based on the foregoing, we cannot say the court's decision is unreasonable, arbitrary, or fanciful, or that no reasonable person would take the circuit court's view.

¶ 20                                    III. CONCLUSION

¶ 21    Following a thorough review of the record on appeal, for the reasons stated, the circuit court's order is affirmed.

¶ 22    Affirmed.