2024 IL App (1st) 241748-U

No. 1-24-1748B

Order filed December 2, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | Nos.   23 CR 6532 |
| vs. | ) |          23 CR 11863 |
| | ) | |
| WILLIE BAKER, | ) | Honorable |
| | ) | Arthur Wesley Willis, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We affirm the circuit court's order, where the evidence demonstrated that defendant's continued detention was necessary to avoid a real and present threat to the safety of any person(s) or the community, based on the specific articulable facts of the case.

¶ 2     Defendant Willie Baker appeals the circuit court's order continuing his detention. Baker was initially arrested and charged before Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act), was enacted.[1] For the following reasons, we affirm.

---

[1]"The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1. *Raoul* lifted the stay of pretrial release provisions and set an effective date of September 18, 2023. *Id.* ¶ 52; Pub. Acts 101-652, § 10-255, 102  1104, § 70 (eff. Jan. 1, 2023).

¶ 3                                    I. BACKGROUND

¶ 4          Baker was arrested following a May 19, 2023 incident where he forced entry into a woman's apartment and subsequently beat victim Roman Mills with a piece of the broken front door frame. Baker was subsequently charged in case 23 CR 6532 with attempt (murder), home invasion, aggravated battery, and aggravated unlawful restraint. The State's memorandum indicates that Baker posted bond for the offense but was arrested in August 2023 for domestic battery. While he was initially taken into custody for violating his bail bond, the domestic violence case was subsequently dismissed and Baker remained out on bond until October 22, 2023.

¶ 5          The first document in the record indicates that the State filed a petition for revocation of pretrial release on October 23, 2023, pursuant to section 5/110-6(b) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6(b) (West 2022)). The petition alleged that while on pretrial release in 23 CR 6532, Baker was charged with a new felony—unlawful use of a weapon by a felon (UUWF)—in case 23 CR 11863. The State failed to indicate if it believed that no condition or combination of conditions of release would reasonably ensure Baker's appearance for later hearings or if it believed that no conditions would prevent Baker from being charged with a subsequent felony or Class A misdemeanor.

¶ 6          On November 21, 2023, Baker filed a "petition to grant pretrial release" in both pending cases, 23 CR 6532 and 23 CR 11863, requesting the court review its previous detention decisions. On the same day, the State filed a petition for pretrial detention hearing, pursuant to sections 110-2 and 110-6.1 of the Code (725 ILCS 5/110-2, 110-6.1 (West 2022)). The petition alleged that, in case 23 CR 6532, Baker committed an eligible offense (attempted first degree murder, home invasion, and aggravated battery, great bodily harm) as listed in section 110-6.1(a)(1) of the Code and that he poses "a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case." Specifically, the State relayed that:

"[Baker] kicked open the door of an apartment belonging to another individual and then began to strike victim in the face with closed fists. When the homeowner attempted to stop [Baker] by striking him with a piece of wood, [Baker] took the piece of wood and then struck the victim in the head with it 5-10 times, until after the victim had lost consciousness."

¶ 7    Also on November 21, the court entered a written detention order using a template form that lists the requisite three propositions—(1) the proof is evident or the presumption great that the defendant has committed a detention eligible offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific articulable facts of the case, and (3) no condition or combination of conditions of release can mitigate that threat. On lines provided below each proposition, the court wrote specific facts from the case that it relied upon to reach its findings. Beside the preprinted finding for the first proposition, the court wrote, "Attempt Murder, Home Invasion, Agg. Batt. GBH." For the second proposition, the court wrote, "[Baker] allegedly committed a home invasion and struck the victim repeatedly causing great bodily harm in front of two witnesses." For the third proposition, the court wrote: "The safety of the sanctity of a home and an individual to be free from an assault is violated in this matter and release would subject the victim and witnesses to further abuse." The order indicates that Baker is to be detained pending trial and further lists four individuals with whom Baker is to have no direct or indirect contact of any kind. Baker did not appeal this order.

¶ 8    On May 13, 2024, Baker again filed a "petition to grant pretrial release," requesting that the court grant him release under the Act because he "has used his time in CCDOC effectively," he has a place to stay on electronic monitoring (EM), and he has a job waiting for him.

¶ 9    The court held a hearing on Baker's continued detention on May 29, 2024. Defense counsel highlighted that Baker has been in custody for more than 170 days and that he has been a model

detainee with no disciplinary actions. Although not assigned to a program deck, Baker has requested to be placed on one and has taken advantage of all opportunities presented to him while in custody. Baker has great family support, including his mother who attends every court date. He has a place to go on EM and has a job waiting for him. Counsel argued that Baker has proven he can follow EM conditions and that EM would protect the community, allow Baker to work, and allow him to "regain some of his life."

¶ 10          In response, the State first proffered the factual basis for case 23 CR 6532. On May 19, 2023, Baker was involved in an incident in the 600 block of South Christine Avenue in Chicago, Illinois. Baker has been in an "on-again/off-again" relationship with witness Woods for about two years.[2] On May 19, Woods was with victim Mills and two other friends in her apartment. Baker was "aggravated" that he was not invited. Mills went to sleep around 11 p.m., but Woods and the other individuals were still awake. At approximately 3 a.m., Woods called Baker and indicated she needed help of some sort. Woods does not remember making the call, but Baker was agitated when he arrived at Woods's apartment. POD camera footage depicts Baker walking toward the apartment and up to the front porch, where he waits. A witness, Ms. Barron, comes down the stairs and Baker gains entry into the apartment building.

¶ 11          Baker entered the building, yelling, and demanding to know why everyone was invited but he was not. Woods called 911 to report that Baker had a firearm, as he told her he was armed. Baker walked up the stairs and was eventually able to gain entry to Woods's apartment. Although no one observed Baker kicking the front door, there was a visible shoe print on the door, and the frame was observed to be "broken off." Mills awakened and Baker struck Mills in the face with a closed fist. A physical altercation ensued between the two, with Mills on the floor and Baker on

---

[2]Woods's first name is not available in the record.

top of him. Baker continued to strike Mills, and Woods grabbed a two-by-four—which she believed to be a part of the broken doorframe—and struck Baker in the head multiple times, attempting to help Mills. Baker wrestled the two-by-four from Woods, stood over Mills, and used the two-by-four to strike Mills in the head five to ten times. Mills had his arms up to defend himself, however, once Mills passed out, his arms fell. Baker continued to strike Mills after Mills's arms dropped. As Baker persisted in beating Mills with the two-by-four, Woods left the apartment. Baker then left the apartment. Another witness, Goodwin, made a call to the police.[3] Police arrived and detained Baker.

¶ 12        Mills was transported to a hospital where he was treated for multiple lacerations to his face and head. Baker received stitches, had a broken nose, and had a swollen right hand. Goodwin identified Baker as the person who battered Mills and positively identified him in a photographic lineup. Woods and Mills additionally positively identified Baker in a photo array. Mills knew Baker and indicated that Baker had approached him on a prior occasion to let him know that Baker was dating Woods. Baker appeared jealous during this interaction. Following his arrest in this case, Baker posted bond. However, he was arrested shortly thereafter for domestic battery. The domestic battery case was dismissed and Baker again posted bond.

¶ 13        On October 22, 2023, Baker was arrested for a firearm offense after officers responded to a call of a domestic disturbance in the 300 block of West 105th Street, in Chicago. In the call, a suspect was described as an African American male holding his waistband and wearing a black jacket, maroon shirt, and gray pants. When police officers arrived, they observed Baker, who was dressed in clothes that resembled the description provided. Baker fled on foot, holding his waistband. Baker was detained in a nearby area, wearing clothing that matched the description

---

[3]Goodwin's first name is not available in the record.

provided. The officers conducted a search of the area where Baker had fled and located a firearm on a front lawn within his path of flight. Baker was arrested and officers learned that he had neither a valid Firearm Owner's Identification card (FOID) nor a concealed carry license (CCL). Following the administration of his *Miranda* rights, Baker informed police officers that he had purchased the gun on the West Side for $500 and that he was a previously convicted felon.

¶ 14    The State further proffered that Baker has 11 felony convictions from 1989 to 2018, all drug related, save for a 1994 possession of a stolen motor vehicle, for which he received four years' imprisonment. Baker also has eight failures to appear.

¶ 15    In response, defense counsel argued that much of the proffer was based on speculation and witnesses ascribing certain motives and behaviors to Baker. Counsel stated that Baker never possessed a firearm and did not bring a weapon to the May 2023 incident. He further posited that the evidence at trial will indicate that Baker was not the aggressor in the incident and that he was acting in self-defense. He stated that Baker was severely injured and only used the two-by-four to defend himself. As to the dismissed domestic violence case and the pending UUWF case, counsel stated that Baker has a valid defense and the pending case is nonviolent. Counsel further argued that Baker's background is entirely nonviolent and that EM is an appropriate condition of release. Baker could stay at his mother's house if released on EM.

¶ 16    The State responded that Baker does not have any domestic violence related convictions and does not have any prior incidents with Mills.

¶ 17    The court held that, regarding case 23 CR 6532, there was clear and convincing evidence that the proof is evident and the presumption great that Baker had committed the eligible offenses. The State's proffers demonstrated that Baker was identified clearly by multiple witnesses. Further, the victim knew Baker and identified him as the assailant. As to the 23 CR 11863 case, the court found that the State proved by clear and convincing evidence that the proof is evident and the

presumption great that Baker committed the offense of UUWF. The court noted that Baker poses a real and present threat to the safety of any persons or the community based on the specific articulable facts of the case. The court highlighted counsel's argument that Baker has changed since he has been in custody, that he has been a model detainee, that he has familial support, and that EM will protect the community. However, the court found that Baker allegedly committed a home invasion and caused great bodily harm by striking the victim repeatedly in front of multiple witnesses. Baker gained entry to the residence via subterfuge and struck the victim with a two-by-four. The court noted that despite Baker's claim of self-defense, the victim was in his own home late at night when Baker somehow gained entry to the home and accosted him. There was damage to the home's front door. While counsel argues that Baker was injured during the incident, the State's proffer contradicted counsel's argument that Baker's injuries occurred from the victim attacking him. The court noted that while on bond in the attempted murder case, Baker was arrested for illegal possession of a firearm. The court found that Baker has "shown utter disregard for taking into consideration what he should be doing while he is on release." The court held that no conditions can mitigate the risk that Baker poses. Specifically with regard to Baker's request for EM, the court noted that the allegations arise from a "domestic-type relationship, or domestic adjacent," and that no conditions could satisfy the court that Baker would not have a recurrence of a violent reaction if he were placed in a stressful domestic situation again. Notwithstanding any progress made since Baker has been in custody, the court noted that detention presents a static environment whereas EM would place Baker in a domestic situation where he could potentially react violently towards his mother.

¶ 18    On August 12, 2024, Baker filed a "Motion for Relief Under the Pretrial Fairness Act," requesting the trial court review its order denying Baker pretrial release. See Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). Baker argued the State failed to prove that (1) the proof

is evident or the presumption great that he committed the offenses charged, (2) he poses a real and present threat to the safety of any persons or the community based on the specific, articulable facts of the case, and (3) no conditions can mitigate the real and present threat. Last, Baker contended that the court erred in its determination that no conditions would reasonably ensure Baker's appearance for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor.

¶ 19　　At the August 16, 2024 hearing on Baker's motion, defense counsel clarified that Baker was seeking review of the court's May 29 determination ordering Baker's continued detention. Counsel argued that the State had failed to prove that continued detention is necessary to avoid a real and present threat to the safety of person(s) or to prevent willful flight. In support, counsel argued that there was no dispute that Baker was the first individual to be hit by the two-by-four and that Baker suffered serious injuries. Accordingly, Baker intends to raise a self-defense argument at trial. Further, counsel contended that Baker's second case was a nonviolent firearm case. Counsel highlighted that Baker has received no discipline while in custody and is a model inmate, with a strong support network. Finally, counsel argued that Baker had a job waiting for him and should be released on EM, because he does not pose a danger and his background does not indicate any sort of violence.

¶ 20　　The State countered that Baker is charged with a detainable offense and there is clear and convincing evidence that Baker committed the offense of attempted murder. The State argued that Baker poses a real and present threat to identifiable persons or the community and noted that the victim sustained serious injuries after Baker forced his way into a home and beat him. Baker, the State noted, knows the identity and addresses of the witnesses and victim in this case. Moreover, Baker was arrested for illegal possession of a firearm while on bond for the attempted murder case.

¶ 21　　In rebuttal, defense counsel noted that Baker had been invited to the home by "Ms. Cleo

Williams" and noted that Baker would be willing to do a 24-hour EM detention without movement.

¶ 22　　After reviewing the transcript of the May 29 continued detention hearing, the court recounted, in detail, the proffered facts of the case. The court noted that there is no doubt that Baker is the individual who was involved in the attempted murder. It further observed that the firearm possession case originated after a call of a domestic disturbance, similar to the domestic relationship in the attempted murder and home invasion case. Ultimately, the court held that continued detention is necessary in the attempted murder case, as Baker poses a real and present risk to the safety of any person or persons, including the victim and witnesses. As to the possession case, the court found that Baker poses a real and present threat and there is a risk of willful flight. Moreover, the court noted that Baker was "released on a serious Class X offense [when he] subsequently armed himself with a weapon and is involved in a new domestic [incident]."

¶ 23　　Baker thereafter filed a timely notice of appeal pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024).

¶ 24　　　　　　　　　　　　　　II. ANALYSIS

¶ 25　　Baker did not file a memorandum with this court, choosing instead to stand on the arguments he made in his motion for relief. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) ("The motion for relief will serve as the argument of the appellant on appeal."). Thus, on appeal, we are limited to the arguments made in Baker's motion for relief.

¶ 26　　Baker's claims of error consists of four claims: (1) the State failed to prove the presumption was great that he committed the offenses charged, (2) the State failed to prove that he poses a real and present threat to the safety of any persons or the community based on the specific, articulable facts of the case, (3) the State failed to prove that no conditions can mitigate the threat he poses, and (4) the court erred in its determination that no conditions would reasonably ensure his

appearance for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor.

¶ 27    The State filed a responsive memorandum, arguing that the trial court needed to consider only whether Baker's continued detention was necessary. However, it noted that the court nonetheless found that the State presented clear and convincing evidence on all three of the requisite factors for initial pretrial detention hearings.

¶ 28    "Pretrial release is governed by section 110 of the Code as amended by the Act." *People v. Morales*, 2023 IL App (2d) 230334, ¶ 4 (citing 725 ILCS 5/110-1 et seq. (West 2022)). Pursuant to the Code, "it is presumed that a defendant is entitled to release on personal recognizance on the condition that the defendant shall attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release." 725 ILCS 5/110-2(a) (West 2022). Under the Code, all persons charged with an offense are eligible for pretrial release before conviction. *Id*. The court may deny pretrial release only upon a verified petition by the State and following a hearing. 725 ILCS 5/110-6.1(a) (West 2022). It is the State's burden to prove by clear and convincing evidence that (1) the presumption is great or the proof evident that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific and articulable facts of the case, and (3) no condition or combination of conditions can mitigate the threat the defendant poses, or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022). The standard "requires proof greater than a preponderance, but not quite approaching the criminal standard of beyond a reasonable doubt." *In re D.T.*, 212 Ill. 2d 347, 362 (2004).

¶ 29    Where a defendant has previously been ordered detained, the "statute also imposes a continuing obligation for the court to assess whether continued detention is necessary." *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 21. In such cases, as here, the proper question before the

court is whether continued detention is necessary "to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.5(i-5) (West 2022). In determining whether continued detention is appropriate, "the Code does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing." *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13.

¶ 30      The required finding in section 110-6.1(i-5) does share some commonalities with the burden the State must meet at an initial detention hearing. *Mansoori*, 2024 IL App (1st) 232351, ¶ 33. However, "[n]otably, this portion of the Code, unlike the portions dealing with petitions for detention, does not prescribe a quantum of evidence or place a burden of proof on any party." *Id*. ¶ 18. "Rather than ask whether pretrial conditions can mitigate the threat posed by a defendant, it starts from the premise that detention was necessary to guard against that threat and asks whether anything has changed such that a defendant's detention is no longer warranted." *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14 (holding that "the finding required by section 110-6.1(i-5) is simply a less demanding standard than what is required at the detention hearing, though both are concerned with fundamentally the same question."). Where a trial court finds "that the State presented clear and convincing evidence on all three elements required by section 110-6.1(e), that finding necessarily encompass[es] the continued detention finding required by section 110-6.1(i-5)." *Id*. We review the circuit court's determination on continued detention for an abuse of discretion. *Id*. ¶ 16; *People v. Casey*, 2024 IL App (3d) 230568, ¶¶ 11-13; *People v. Walton*, 2024 IL App (4th) 240541, ¶ 40. A trial court abuses its discretion only when (1) its decision is arbitrary, fanciful, or unreasonable, or (2) no reasonable person would take the view adopted by the court. *People v. Towns*, 2020 IL App (1st) 171145, ¶ 44.

¶ 31    In this case, Baker unambiguously lays out in his motion for relief that he is appealing the court's "May 29, 2024 decision denying pretrial release." However, his arguments in his motion are targeted specifically at whether the State has met its burden in proving the three necessary propositions for pretrial detention and at the court's original detention determination. These arguments—despite defense counsel's clarification at the hearing on August 16, 2024 that Baker is contesting the court's continued detention decision—are directed towards the findings that must be made at an original detention hearing. Moreover, in his notice filed in lieu of memorandum, Baker again specifies he is appealing the written order entered following the hearing on August 16, 2024, and references the same four arguments that are raised in his motion for relief. Clearly, Baker has failed to challenge what would have been the sole issue before the court on a continued detention hearing—namely, whether his continued detention was necessary to avoid a safety threat or prevent his willful flight. Therefore, Baker has failed to put the matter before us for review. See *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22 (observing that appellate review under Rule 604(h) is limited to the arguments raised in the notice of appeal and, if filed, included in the appellant's memorandum).

¶ 32    Nonetheless, the evidence proffered at the May 29 and August 16, 2024 hearings supported the court's finding that Baker's continued detention is necessary to avoid the real and present threat he poses. The court found that Baker broke down a door to gain access to an apartment where he then attacked an individual. Baker continued to attack the individual even while others tried to stop him, moving from striking the victim with his fist to striking the victim with a two-by-four from the broken door frame. Thereafter, while out on pretrial release in the attempted murder and home invasion case (a Class X offense), Baker subsequently was involved in another domestic disturbance. After fleeing from police officers in that instance, he was arrested and charged with illegal possession of a firearm. Consequently, the court noted that Baker is a real and present threat

to the safety of persons, including the victim in the second case and the victim and witnesses in the first case. We find the facts proffered in this case support both the court's decision to deny Baker's motion and its conclusion that continued detention was necessary. Based on the foregoing, we cannot say the court's decision is unreasonable, arbitrary, or fanciful, or that no reasonable person would take the circuit court's view.

¶ 33                                  III. CONCLUSION

¶ 34        Following a review of the record on appeal, for the reasons stated, the circuit court's order is affirmed.

¶ 35        Affirmed.