2025 IL App (1st) 242594-U

No. 1-24-2594B

Order filed April 24, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19 CR 12058 |
| EDDIE WILLIAMS, | ) ) | Honorable Jennifer Frances Coleman, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Rochford and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the judgment of the circuit court of Cook County that the defendant should remain in pretrial detention.

¶ 2    Defendant Eddie Williams appeals from an order of the circuit court of Cook County denying him pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110 *et seq.* (West 2022), as amended by Public Act 101-652 § 10-255 (eff. Jan. 1, 2023)), commonly known as the Safety, Accountability, Fairness and Equity-Today Act (Act). Mr.

Williams contends that the court erred in finding the State had met its burden of proving by clear and convincing evidence (1) proof was evident and presumption great that he committed the offense of first-degree murder; (2) he presented a real and present threat to any person or the community, and (3) no condition or combination of conditions could mitigate the real and present threat he posed. For the reasons that follow, we affirm.

¶ 3                              I. BACKGROUND

¶ 4     On July 31, 2019, Mr. Williams was arrested and charged with first-degree murder. Before the Act went into effect, he was ordered to be held without bond. On October 3, 2023, after the Act went into effect, he filed a petition to grant pretrial release. In response, the State filed a petition to deny pretrial release. The State's petition and transcript of the hearing were not included in the record. However, the record did include the court's order, entered by Judge Mariano Reyna, denying pretrial release on October 10, 2023.

¶ 5     Based on the written order, the court found that the State proved by clear and convincing evidence that the proof was evident and the presumption great that Mr. Williams committed the offense of first-degree murder. It also found Mr. Williams posed a real and present threat to the safety of a person or persons in the community based on the facts that he allegedly stabbed the victim 30 times; was the only person seen entering and exiting the apartment he shared with the victim two hours before police arrived; there were no signs of forced entry into the apartment; he had knife slippage wounds on his fingers; and that he was on parole at the time of the incident. The court used these facts to determine that no condition or combination of conditions could mitigate the real and present threat Mr. Williams posed.

¶ 6     On July 2, 2024, Mr. Williams filed a Supplemental Petition to Grant Pretrial Release, stating that he was not a threat or a flight risk due to his physical infirmities. In the petition, he

offered that he could be released to a residential placement center with electronic monitoring. He also included a "Declaration" from Dr. William Weber, a Rush University Medical Center Emergency Room physician and director of the "Medical Justice Alliance." According to the report, Mr. Williams was diagnosed with glaucoma, type two diabetes, and hypertension. He underwent multiple surgeries to correct his eyesight and has been declared legally bind. Dr. Weber opined that due to Mr. Williams' glaucoma and the fact that he requires a wheelchair for daily activities, he posed a "very minimal physical threat to others." Dr. Weber did not treat or examine Mr. Williams before giving his opinion.

¶ 7    The court heard Mr. Williams on his petition on September 3, 2024. At the hearing, Mr. Williams requested that he be released to a nursing home on electronic monitoring with additional conditions and referenced Dr. Weber's report for support. Dr. Weber was not called to testify at the hearing. Additionally, defense counsel presented information regarding Mr. Williams' record while incarcerated. Counsel informed the court that Mr. Williams had not received any disciplinary infractions during his incarceration. He has also completed "over 300 learning hours preparing to take the GED test," participated in the Northwestern University math new application program, the Safer Foundation's program, Reading Between the Lines, and the contextual program offered by the jail. Defense counsel then argued that Mr. Williams did not present a risk of flight from prosecution as Mr. Williams did not attempt to flee the jurisdiction following the incident.

¶ 8    Regarding the possibility of being released into a nursing care facility, defense counsel stated that two facilities would be willing to accept Mr. Williams. Counsel informed the court that these facilities had assessed his medical needs, his charges, and his background. The court asked questions regarding the level of security at the nursing home. Counsel was not able to answer all

questions posed by the court but did state that if he were released to the nursing home, "he might be sharing a room."

¶ 9     The court denied Mr. Williams' motion to reconsider his detention. It noted that despite Mr. Williams' medical issues, there was no physical reason why he uses a wheelchair except for vision problems. It stated, "[i]t's very clear in here on page 2 [of Dr. Weber's report] that he can walk with a cane short distances; he uses the wheelchair because he feels unsteady and he stumbles but that he does have no independent mobility issues. It's all really just related to his eyesight, but he still does have some eyesight." The court also noted that "the allegation here is that he committed this really horrific offense in his home, so I just don't see how [electronic monitoring] really helps." It acknowledged his extensive criminal history as well as the vulnerability of the other residents of the nursing home, stating, "He was on parole at the time and he has a very extensive criminal background which leads me to believe that he is not as inclined to follow orders of the court with regard to any pretrial relief***."

¶ 10    On September 24, 2024, Mr. Williams filed a motion to reconsider the court's order for detention. He also informed the court that if he were to be released to the nursing home, he would have a roommate and would be free to leave the facility. The trial court denied the motion to reconsider, concluding that electronic monitoring would not mitigate the threat he posed to the nursing home residents despite his physical limitations.

¶ 11    Mr. Williams filed a motion for relief, which the court denied. Mr. Williams filed timely notice of appeal from the circuit court's judgment. We find that we have jurisdiction to consider the merits of this appeal pursuant to Illinois Supreme Court Rule 604(h)(1)(iii) (eff. Apr. 15, 2024).

¶ 12                                    II. ANALYSIS

¶ 13    Mr. Williams did not file an appellant memorandum and elected to stand on the arguments made in his motion for relief pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024). In his motion for relief, Mr. Williams contends the circuit court erred in ordering his continued detention, arguing that the State failed to meet all three propositions imposed by section 110-6.1(e) of the Code. See 725 ILCS 5/110-6.1(e) (West 2022).

¶ 14    After a defendant has been denied pretrial release, at each subsequent court appearance, the circuit court "must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022). It is not required for the court "to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing." *People v. Casey*, 2024 IL App (3d) 230568, ¶ 14. At a continued detention hearing, the court starts from the premise that detention was necessary to guard against the threat posed by the defendant and "asks whether anything has changed such that a defendant's detention is no longer warranted." *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14. The finding required by section 110-6.1(i-5) is "a less demanding standard than what is required at the detention hearing, though both are concerned with fundamentally the same question." *Id.*

¶ 15    As the continued detention hearings proceeded by proffer and written documents, we review the circuit court's decision *de novo*. See *People v. Morgan*, 2025 IL 130626, ¶ 54 ("when the parties to a pretrial detention hearing proceed solely by proffer" the reviewing court may conduct its review *de novo*). Though *Morgan* involved an initial petition for detention, its reasoning applies equally to hearings on continued detention where the parties again proceed solely by proffer. See *People v. Wilson*, 2025 IL App (1st) 242454-U, ¶ 21.

¶ 16 Mr. Williams argues that he should have been released based on new information regarding his diminished eyesight and mobility since his incarceration. He contends that due to his regressing health, he should have been released to a nursing home facility with electronic monitoring. He also points to his lack of disciplinary record while incarcerated and his participation in several educational and self-improvement programs to support his request for release.

¶ 17 In this case, Mr. Williams was detained pursuant to the Act on October 10, 2023, and the hearings on September 3, 2024, and September 24, 2024, were subsequent appearances where the only consideration was whether Mr. Williams should remain in pretrial detention. See 725 ILCS 5/110-6.1(i-5) (West 2022); see also *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 21. As such, Mr. Williams' contention that the court erred in finding the State met its burden in all three propositions is not at issue here. Rather, we only review whether continued detention was necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. See *People v. Salley*, 2025 IL App (1st) 242240-U, ¶ 23.

¶ 18 We acknowledge that Mr. Williams received no disciplinary tickets and availed himself of several educational and self-improvement programs while incarcerated. We also note that Mr. Williams only has limited eyesight which causes him to use a wheelchair due to the instability he feels as a result of his diminished eyesight. His serious medical problems limit his mobility however he does maintain mobility.

¶ 19 As the circuit court discussed, the facts in this case involve the violent murder of an intimate partner. It is alleged that Mr. Williams stabbed his long-term girlfriend over 30 times in their home. Placing Mr. Williams in a facility with little security and housed by vulnerable individuals, some of whom could become his roommate, does not alleviate the real and present

danger he presents to the community. Moreover, defense counsel confirmed that if placed in the nursing facility, he would be allowed to leave the facility at any time. Finally, as the court also noted, he was on parole at the time the incident took place and has an extensive criminal history, which suggests he may not comply with future court orders. Again, our inquiry is whether continued detention is necessary to mitigate the threat Mr. Williams poses to a person or the community. See 725 ILCS 5/110-6.1(i-5). Nothing presented to the court supports a conclusion that defendant's detention is no longer warranted. See *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14. Based on the specific, articulable facts of the case, we find continued detention is necessary.

¶ 20                                    III. CONCLUSION

¶ 21     For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 22     Affirmed.