2025 IL App (1st) 250481-U

No. 1-25-0481B

Order filed June 18, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Nos. 19 CR 12258 19 CR 12259 19 CR 13576 |
| CHRISTOPHER MANSOORI, | ) ) | |
| Defendant-Appellant. | ) ) ) | Honorable Neera Walsh, Judge, presiding. |

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justice D.B. Walker concurred in the judgment.
Justice Reyes specially concurred.

**ORDER**

¶ 1    *Held*:    The judgment of the trial court which ordered defendant's continued detention and subsequently denied his Rule 604(h) motion for relief is affirmed.

¶ 2    Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act, amended article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)) and effected sweeping changes to the laws governing pretrial release and detention. See

*Rowe v. Raoul*, 2023 IL 129248, ¶ 4 & n.1 (noting neither "(SAFE-T) Act" nor "Pretrial Fairness Act" are "official" names but common shorthand for sequence of public acts). One of those changes is a provision which requires the trial court, at every court date, to find that continued detention is necessary to avoid a real and present threat to the safety of any person or to prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(i-5) (West 2022). Defendant Christopher Mansoori sought his release from detention and now appeals the trial court's finding that his continued detention is necessary to avoid a real and present threat to any person.

¶ 3    For the reasons that follow, we affirm the judgment of the trial court.

¶ 4                                    I. BACKGROUND

¶ 5    On September 5, 2019, the State charged defendant in two separate cases, 19 CR 12258 and 19 CR 12259, each of which alleged two counts of domestic battery against the same person that took place on April 22, 2019, and June 7, 2019. On October 7, 2019, the State subsequently charged defendant in a third indictment under case number 19 CR 13576, alleging two counts of armed violence, two counts of possession of a controlled substance, and two counts of aggravated unlawful use of a weapon, all of which occurred on August 2, 2019.

¶ 6    Defendant was arrested on August 2, 2019, and released on bail in early August 2019, with a bail amount of $150,000-D. His bail was revoked in October 2019, after a hearing where the State claimed that defendant used a third party to attempt contact with the complaining witness in his domestic battery cases.

¶ 7    Even though he was in custody, on October 10, 2023, the State filed petitions to detain defendant, which were granted. Defendant appealed, and we reversed. *People v. Mansoori*, 2024 IL App (1st) 232351, ¶ 36. Specifically, we held that because defendant was already detained, the

proper analysis for the trial court was to determine the necessity of defendant's continued detention pursuant to 725 ILCS 5/110-6.1(i-5) (West 2022). *Id*. ¶ 33. Given that the trial court is required to make that finding at every court date, we remanded with instructions to the trial court to make the required finding. *Id*. That decision adequately summarizes the relevant facts and proffers for that proceeding, so we need not restate them here.

¶ 8    Following the issuance of our mandate on May 20, 2024, defendant, who was *pro se*, filed a "Motion for Reconsideration of Pretrial Release Conditions," on June 10, 2024. Defendant argued that he does not pose a threat because the complaining witness in his domestic battery cases lives in Iowa and has lived there for 20 years, and that he was accused of constructively possessing a firearm rather than using the firearm to threaten or injure a person. Defendant also claimed that he was not a flight risk because he appeared in court in 2019 when his bail was revoked, knowing that he might be detained, and that his previous failures to appear were in misdemeanor cases following confusion about court dates and issues with transportation. Defendant further denied attempting to contact the complaining witness in his domestic battery cases. He also claimed that he wrote a letter to the complaining witness's brother on September 13, 2019, expressing concern for the safety of defendant's son and included instructions not to share the letter with the complaining witness. He further alleged that he wrote a Facebook message to the complaining witness's sister, once again expressing concern about the safety of defendant's son.

¶ 9    The trial court held a hearing on defendant's motion on July 11, 2024. During the hearing, defendant argued that one of the alleged instances of domestic battery was actually an occasion where he was defending himself and his son from the complaining witness. He claimed the police reports in his case maintain that he accused the complaining witness of battery before he was charged with domestic battery. Defendant also reiterated that the complaining witness lives in Iowa

and that defendant previously appeared in court knowing the State was seeking to revoke his bail, thus demonstrating that he is not a flight risk.

¶ 10    In response, the State argued that defendant knows where the complaining witness lives in Iowa and is therefore a danger to her. It also claimed that defendant is a threat to the community at large based on "the totality of the allegations and how they stem from an incident at a public office as to one of the incidents, the People felt that police intervention was required." The State provided no further details about this incident.

¶ 11    The trial court found "that by clear and convincing evidence that no condition or combination of conditions of release would reasonably prevent the defendant from being charged with a subsequent felony or a Class A misdemeanor." The trial court reasoned that defendant "reached out to the complaining witness from Cook County Jail through a third party" and that defendant "has the wherewithal to find and contact the complaining witness who does not reside in the state."

¶ 12    On February 26, 2025, defendant filed a motion for relief as required by Supreme Court Rule 604(h). Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). That motion claimed that the trial court erroneously found that defendant reached out to the complaining witness from custody, applied an improper standard, and failed to consider why less restrictive means would not mitigate any threat defendant posed.

¶ 13    The trial court held a hearing on defendant's motion on March 10, 2025. The State provided a factual proffer which stated that defendant was arrested on August 2, 2019. Officers were conducting a follow-up related to a domestic battery and telephone harassment that occurred at a Department of Children and Family Services (DCFS) office at 1026 S. Damen in Chicago, Illinois. The officers were alerted that defendant was at the DCFS office and when they arrived, they

identified him and placed him under arrest. Officers obtained defendant's keys and performed an inventory search of defendant's car which yielded a loaded nine-millimeter handgun in the glovebox, an AR-15 rifle in the trunk with a loaded magazine, five empty magazines, and 100 rounds of ammunition. They also discovered a plastic bag containing crack cocaine.

¶ 14    The State also related the allegations regarding defendant's two domestic battery incidents. On April 22, 2019, defendant was at home with the complaining witness and their eight-month-old child when defendant and the complaining witness got into an argument. During the argument, defendant punched the complaining witness in the arms and side, pushed her into a running shower and pulled some of her hair out, and attempted to push her down a flight of stairs.

¶ 15    On the second occasion on June 7, 2019, defendant and the complaining witness were arguing about what to do with a life insurance payout for the complaining witness's mother. Defendant then stomped on her legs and claimed that he wanted to break her legs. The complaining witness subsequently moved to Iowa, but returned to Chicago on July 6, 2019, to file for an order of protection. The order of protection was granted, but was not served at the time. Between May and June, the complaining witness received multiple threatening text messages and phone calls from defendant, though the State did not provide any details.

¶ 16    Furthermore, the State proffered that it sought the revocation of defendant's bail on October 7, 2019, on the basis that he sent text messages to the complaining witness's sister and a letter to the complaining witness's brother which made disparaging comments about the complaining witness and threatened her with physical harm.

¶ 17    Finally, the State proffered that defendant has four failures to appear, as well as six misdemeanor convictions for phone harassment and domestic battery, both with a different victim, assault, resisting arrest, criminal damage to property, and possession of cannabis.

¶ 18    The trial court stated that defendant had written letters to the complaining witness's family threatening her harm, and that defendant's arrest, with firearms in his car, took place in broad daylight and therefore posed a threat to the community and the complaining witness. The trial court also discounted the efficacy of GPS monitoring, reasoning that "GPS would not give any immediate notification to the court as to that the defendant has violated," and that "GPS would not be viable if the complaining witness is also not in the State of Illinois." It further stated, "There's not a protected area in the State of Illinois, and again, being on electronic monitoring gives this defendant unfettered movement for two days that he could be anywhere, and the court would have no notification of that."

¶ 19    Defendant filed a notice of appeal on March 10, 2025, and this appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, defendant puts forth multiple arguments. First, he argues that the continued detention finding required by the Code places the burden of proof on the State and that our standard of review should be *de novo.* He also argues that the trial court erred in determining that defendant's detention was necessary to avoid a threat to the complaining witness and necessary to prevent defendant from being charged with additional felonies or Class A misdemeanors.

¶ 22                        A. Standard of Review and Burden of Proof

¶ 23    Defendant argues that, when it comes to the finding required by section 110-6.1(i-5) of the Code, the burden of proof falls on the State. In support of this proposition, he argues that, because there is no burden of proof specified in section 110-6.1(i-5) of the Code, the burden should fall on "the party that initiates an action and disturbs the status quo." He also argues that there is "always a presumption that defendant is entitled to release on conditions," citing to 725 ILCS 5/110-2(a).

Finally, defendant claims that the trial court is required to consider the necessity of detention at each and every court date. Thus, in total, defendant argues that these principles equate to the burden of proof resting on the State.

¶ 24    We do not agree with the logic defendant ascribes to these various components. First, we disagree that the presumption of eligibility for pretrial release is ever-present during the pendency of the case. Section 110-2(a) of the Code only states that "All persons charged with an offense shall be eligible for pretrial release before conviction. It is presumed that a defendant is entitled to release on personal recognizance on the condition that the defendant attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release." 725 ILCS 5/110-2(a) (West 2022). Section 110-6.1(e) of the Code also enumerates this presumption. 725 ILCS 5/110-6.1(e) (West 2022). But that presumption is clearly overcome once the State proves by clear and convincing evidence the requisite elements, which authorizes the trial court to order the defendant's pretrial detention. 725 ILCS 5/110-6.1(e)(1)-(4) (West 2022); see *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 27 ("At subsequent hearings, however, the court is not obligated to make the same findings.").

¶ 25    When the trial court is required to determine if a defendant's detention remains necessary at subsequent appearances, the State's burden of clear and convincing evidence no longer applies. *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13. Indeed, it follows logically from the finding required by section 110-6.1(i-5) of the Code that a presumption no longer exists because "rather than ask whether pretrial detention can mitigate the threat posed by a defendant, it starts from the premise that detention was necessary to guard against that threat and asks whether anything has

changed such that a defendant's detention is no longer warranted." *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14.

¶ 26 Likewise, we reject defendant's argument that we should presume the existence of a burden of proof where the statute is silent. See *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 70 (where a statute is silent, the burden falls on the party initiating the proceedings). Even ignoring the fact that defendant is relying on a case that dealt with the burden of proof in administrative proceedings, his argument that the burden of proof should fall on the party that "disturbs the status quo" makes little sense. The Code requires the trial court to consider a defendant's detention at every court date, regardless of whether a party makes such a request. 725 ILCS 5/110-6.1(i-5) (West 2022). There is no party initiating the proceedings when the trial court makes the finding required by section 110-6.1(i-5) of the Code.

¶ 27 Furthermore, the legislature, in multiple locations throughout the Code, specified the burden of proof. In section 110-6.1(e), it specified that the burden of proof is on the State at an initial detention hearing, where the standard is clear and convincing evidence. 725 ILCS 5/110-6.1(e) (West 2022). The legislature also mandated that the State bears the burden to prove the necessity of any particular condition of release by clear and convincing evidence. 725 ILCS 5/110-2(b) (West 2022). Thus, we can only conclude that if the legislature wished for the State to bear the burden of proof with respect to the finding required by section 110-6.1(i-5) of the Code, it knows how to include that language and would have done so. Accordingly, we reject defendant's argument that the State bears the burden of proof in this matter.

¶ 28 Defendant also argues that because the parties proceeded by way of proffers and documentary evidence, that we should review the trial court's determination *de novo*. This court

previously held that the trial court's finding required by section 110-6.1(i-5) of the Code was reviewed for an abuse of discretion. *Thomas*, 2024 IL App (1st) 240479, ¶ 16; see also *Casey*, 2024 IL App (3d) 230568, ¶ 14. We reasoned that "the legislature prescribed no standard of proof, *i.e.*, no degree of confidence required, and has not placed the burden of proof on any particular party," and thus concluded that the legislature intended the section 110-6.1(i-5) finding to be discretionary. *Thomas*, 2024 IL App (1st) 240479, ¶ 16.

¶ 29     However, those cases were decided before our supreme court decided *People v. Morgan*, which held that the trial court's initial detention finding should be reviewed *de novo* when that finding is based solely on proffered evidence and evidence otherwise documentary in nature. *People v. Morgan*, 2025 IL 130626, ¶ 51. Thus, we must decide if cases such as *Thomas* and *Casey* survive the supreme court's holding in *Morgan*.

¶ 30     *Morgan* dealt with a trial court's finding at an initial detention hearing, and not the finding required by section 110-6.1(i-5) of the Code. *Id*. ¶ 1. Although *Morgan* stated its holding in the context of a pretrial detention hearing, it did not expressly disclaim its application to other areas of the Code. *Id*. ¶ 51. However, the discussion of various standards of review in *Morgan* and its analysis of the appellate court's holding are instructive.

¶ 31     In *Morgan*, the appellate court held that that the trial court's judgment regarding a pretrial detention hearing should be reviewed for an abuse of discretion. *Id*. ¶ 27. In criticizing that holding, the supreme court reasoned that "there is nothing discretionary about making a finding as to whether the State has met its standard of proof of a particular fact." *Id*. ¶ 28 (quoting *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 89 (Ellis, J., specially concurring)). It also reasoned that "whether the State has supplied the requisite proof is a binary question; either the State has met its

burden of proof or it has not." *Id*. ¶ 28 (quoting *People v. Wells*, 2024 IL App (1st) 232453, ¶ 38 (Lampkin, J., specially concurring)). The court also observed that the discretion of the trial court is not a standard of proof, as standards of proof are concerned with the quantum and quality of proof that must be presented in order to prevail on an issue. *Id*. ¶ 29.

¶ 32 But as we have already noted, the finding required by section 110-6.1(i-5) of the Code contains no standard of proof or burden of proof. 725 ILCS 5/110-6.1(i-5) (West 2022). Contrasted with an initial detention hearing with a burden on the State and a standard of proof, it is logical that the legislature intended the finding required by section 110-6.1(i-5), with no burden or standard of proof, to be discretionary in nature. Indeed, if the purpose of a standard of proof is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication," *Morgan*, 2025 IL 130626, ¶ 29, then the absence of such a standard suggests the legislature intended to leave the decision to the trial court's discretion. Finally, applying *de novo* review to a finding that the trial court must make at each and every court appearance, which may continually be appealed, and which may not necessarily involve the presentation of any facts or arguments from the parties makes little practical sense.

¶ 33 Accordingly, we believe the standard of review here, reviewing the trial court's finding made pursuant to section 110-6.1(i-5), should be whether the trial court abused its discretion. An abuse of discretion occurs when the trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with the position adopted by the trial court. *Whitaker*, 2024 IL App (1st) 232009, ¶ 50. However, even if we applied a *de novo* standard of review, our disposition would remain the same.

¶ 34                                    B. Necessity of Continued Detention

¶ 35    When an individual is initially charged with an offense, the Code prescribes one procedure by which the State may seek the pretrial detention of a defendant. Section 110-6.1(e) of the Code presumes that all defendants are eligible for pretrial release and places the burden of justifying pretrial detention by clear and convincing evidence on the State. 725 ILCS 5/110-6.1(e) (West 2022). To justify the pretrial detention of a defendant, the State must show by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case; and (3) no condition or combination of conditions found in section 110-10 of the Code can mitigate that real and present threat. *Id.* § 110-6.1(e)(1)-(3).

¶ 36    However, once a defendant is already detained, the Code supplies a different procedure. At each and every court appearance, the trial court must make a finding that "continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." *Id.* § 110-6.1(i-5). As noted above, the Code sets out no standard of proof or burden of proof for this finding. This finding "starts from the premise that detention was necessary to guard against that threat and asks whether anything has changed such that a defendant's detention is no longer warranted." *Thomas*, 2024 IL App (1st) 240479, ¶ 14.

¶ 37    Before proceeding to the core of the issues raised on appeal, we first clarify the scope of this appeal in the context of this court's prior decisions. This court has previously discussed the

proper scope of a hearing on a Rule 604(h)(2) motion for relief, and that the hearing should not function as another full-scale detention hearing. *People v. Williams*, 2024 IL App (1st) 241013, ¶ 28. Instead, the purpose of a motion for relief is to "frame issues on appeal more efficiently, give trial courts the opportunity to correct errors, and streamline the appeals process." *Id*. At the hearing on defendant's motion for relief, the State provided a proffer which contained details that were not recited at the July 11, 2024, hearing when defendant sought his release or during the October 16, 2023, proceedings discussed in defendant's prior appeal. *Mansoori*, 2024 IL App (1st) 232351, ¶¶ 5-8. However, defendant did not object to the State's proffer at the hearing on defendant's motion for relief on March 10, 2025, nor has he argued on appeal that the procedure followed at that hearing was improper. Thus, we have considered the arguments and proffers of the parties at that hearing in full.

¶ 38 Defendant argues that the trial court erred by ordering his continued detention based on a misunderstanding of how electronic monitoring functions. At the hearing on defendant's motion for relief, the trial court reasoned that less restrictive conditions would not suffice because GPS monitoring would not provide immediate notification as to defendant's noncompliance and because GPS monitoring would give defendant two days of unfettered movement. It also reasoned that "there's not a protected area in the state of Illinois."

¶ 39 Our electronic monitoring statute mandates that participants must be provided with movement spread out over no fewer than two days per week to participate in basic activities such as working, seeking employment, obtaining medical care, or purchasing groceries. 730 ILCS 5/5-8-4(A), (A-1) (West 2022). Nothing in that statute, as defendant argues, prohibits the trial court from imposing some restrictions on that allowed movement. And defendant's point is well taken

that it is not clear what the trial court meant when it said that there is no protected area in Illinois. Perhaps the trial court intended to say "Iowa," but the record is unclear. However, even though the trial court's stated reasoning is somewhat flawed, the record provides a clear basis of why the trial court was skeptical of electronic monitoring's efficacy in this case.

¶ 40    Indeed, defendant's defense of electronic monitoring as sufficient to guard against the threat he poses presumes his compliance. Based on the record before us, that is unlikely. The record reflects defendant's numerous instances of noncompliance with laws and rules. Of particular note, defendant has four failures to appear in the past, and he has a history of other domestic offenses against other victims including telephone harassment and domestic battery. Most importantly, his bail was revoked in this case specifically because he was noncompliant with the conditions of his release.

¶ 41    A review of defendant's bail revocation hearing on October 7, 2019, reveals that defendant was ordered not to have contact with the complaining witness or her family, and defendant nevertheless made contact with the complaining witness's sister via text message, at which point he bragged about posting bond, made disparaging comments about the complaining witness, and told the sister "not to indicate anything because no one knew that he had bonded out." Defendant also contacted the complaining witness's brother by letter in which he made more disparaging comments about the complaining witness and described how he would harm her in the future, saying, "I told her let me find out that you did that on purpose and I will beat the dog shit out of you."

¶ 42    Additionally, defendant's bail revocation hearing reveals that he was arrested at a DCFS office because the complaining witness was there with her daughter and defendant arrived there

and "caused a scene." He argues that the allegations against him are not sufficient to justify his detention based on a threat to the complaining witness or the community at large. We have previously said that the basic allegations against a defendant that constitute an offense are, without more, insufficient to demonstrate that less restrictive means cannot mitigate the threat a defendant poses. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18. This is because "if the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release." *Id.*

¶ 43    But in this case, we have much more than the mere allegations that make up the basic elements of the offenses. After attacking the complaining witness twice, defendant showed up to a DCFS office where the complaining witness was present with her young daughter and engaged in behavior that necessitated summoning the police. Meanwhile, his car was parked outside the office and it contained a loaded nine-millimeter pistol and an AR-15 rifle, which was loaded and accompanied by 100 rounds of spare ammunition. In the context of the prior allegations of extreme violence against the complaining witness, which involved not only striking her and pulling her hair out, but stating a desire to break her legs and attempting to throw her down a set of stairs, the trial court's ruling that continued detention was necessary was patently reasonable. These instances of erratic and violent behavior while having access to loaded, and unlicensed, firearms are clearly a threat to others.

¶ 44    Given the lengths to which defendant has allegedly gone to attack and harass the complaining witness, the trial court did not abuse its discretion by ordering defendant's continued detention. Because we find this to be a valid basis for defendant's continued detention, we need

not reach defendant's second argument that the trial court erred in finding his detention necessary to prevent him from being charged with another felony or Class A misdemeanor.

¶ 45                                    III. CONCLUSION

¶ 46     The trial court did not err in ordering defendant's continued detention. For the foregoing reasons, we affirm the judgment of the trial court.

¶ 47     Affirmed.

¶ 48     REYES, J., specially concurring:

¶ 49     I concur with the majority's conclusion that the trial court properly ordered defendant's continued detention and denied his Rule 604(h) motion for relief. I must write separately, however, concerning several aspects of the majority's decision.

¶ 50     First, as the majority observes, this case is before us after it was previously remanded for a continued detention hearing "pursuant to 725 ILCS 5/110-6.1(i-5) (West 2022)." *Supra* ¶ 7. I dissented from that decision, in part, due to the majority's determination that any continued detention hearing was required to be held in accordance with section 110-6.1(i-5). See *People v. Mansoori*, 2024 IL App (1st) 232351, ¶ 43 (Reyes, P.J., dissenting). I noted that defendant was in custody due to the revocation of his pretrial release, which was governed by section 110-6 of the Code (725 ILCS 5/110-6 (West 2022)), and that section 110-6.1(i-5) was therefore inapplicable to his case. *Id.* I continue to maintain that position—as the majority in the earlier appeal reversed the detention petition filed by the State, there has effectively never been a petition to detain defendant pursuant to section 110-6.1. The only basis for defendant's detention is the revocation of his pretrial release under section 110-6. Any continued detention hearing should therefore be held according to that statute.

¶ 51 I observe that the continued detention hearing held on remand, while ostensibly held pursuant to section 110-6.1(i-5) of the Code, was, in substance, a hearing pursuant to section 110-6. Indeed, the trial court's order after the continued detention hearing was on the form specified for hearings under section 110-6, and its findings—both oral and written—were based on its determination that no conditions of release would prevent defendant from being charged with a subsequent felony or Class A misdemeanor, which is the standard for continued detention under section 110-6(j). See 725 ILCS 5/110-6(j) (West 2022); *supra* ¶ 11. In considering defendant's motion for relief, however, the trial court appears to have applied the standards applicable to section 110-6.1(i-5). Under both statutes, the trial court is required to reevaluate whether continued detention is appropriate at each appearance by defendant before the trial court. See 725 ILCS 5/110-6(j), 110-6.1(i-5) (West 2022). In this case, based on the trial court's findings, continued detention would have been appropriate under either statute, and I therefore find no error in the trial court's conclusion. In the future, however, I urge the State—and the trial court—to exercise caution to ensure that they are proceeding under the correct standard.

¶ 52 I must also write separately concerning the majority's determination as to the standard of review to be applied. The foundation of its analysis is its position that there is no burden of proof at continued detention hearings. See, *e.g.*, *supra* ¶ 27 ("reject[ing] defendant's argument that the State bears the burden of proof in this matter"); ¶ 32 (indicating that the finding in a continued detention hearing has "no burden or standard of proof"). This is not an entirely novel position, as it has been adopted by other courts. See, *e.g.*, *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14. The cases adopting such a position, however, have not addressed section 110-2(b), which provides that "[a]t *all* pretrial hearings, the prosecution shall have the burden to prove by clear and

convincing evidence that any condition of release is necessary." (Emphasis added.) 725 ILCS 5/110-2(b) (West 2022). In my view, a continued detention hearing could fall within the plain language of this subsection. See *People v. Milner*, 2024 IL App (1st) 241284, ¶ 37 (in construing a different section of the Pretrial Fairness Act, observing that the words " 'if any' " when referencing conditions of release make clear that one possible result is that no such conditions of release exist); *People v. Watkins-Romaine*, 2025 IL 130618, ¶ 40 (citing *Milner* with approval). At a minimum, a number of courts have found that the State continues to bear *some* burden of proof in continued detention hearings, even if it is a lesser one. See, *e.g.*, *People v. Stokes*, 2024 IL App (1st) 232022-U, ¶ 29 ("it remains the State's burden throughout the progression of the defendant's case to demonstrate that detention continues to be necessary"); *People v. Cross*, 2024 IL App (1st) 240616-U, ¶ 37 (same); *People v. Harris*, 2024 IL App (2d) 240070, ¶ 39 (same); *People v. Jones*, 2024 IL App (1st) 240515-U, ¶ 5 (same). Thus, it is not entirely clear to me that there is "no burden or standard of proof" (*supra* ¶ 32) in continued detention hearings, as asserted by the majority.

¶ 53    Since the majority's adoption of an abuse of discretion standard of review is based on the above reasoning concerning the standard of proof, I similarly find it unclear whether an abuse of discretion standard of review is appropriate, especially in light of our supreme court's decision in *People v. Morgan*, 2025 IL 130626. I agree, however, with the majority in its finding that continued detention was appropriate in this case, regardless of the standard of review applied.