2025 IL App (1st) 250730B-U

No. 1-25-0730B

Sixth Division
July 17, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellee, | ) Cook County. |
| | ) |
| v. | ) No. 22CR0100501 |
| | ) |
| | ) |
| CARLOS MARTINEZ, | ) Honorable |
| | ) James Michael Obbish, |
| Defendant-Appellant. | ) Judge Presiding |

PRESIDING JUSTICE TAILOR delivered the judgment of the court.
Justices Hyman and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held:* The circuit court did not err in ordering defendant's continued pre-trial detention.

¶ 2    Defendant Carlos Martinez is charged with attempted first-degree murder and aggravated battery of his four-month-old son. He appeals from the circuit court's order that continued his pretrial detention pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). We affirm the judgment of the trial court.

¶ 3                                BACKGROUND

¶ 4      On November 29, 2021, Martinez called 911 because his son, who was four months old, appeared unresponsive. The child was taken by ambulance to the hospital, where he was diagnosed with "subdural hematomas to [his] brain as a result of irreversible head trauma." On December 16, 2021, Martinez was arrested for the attempted murder and aggravated battery of his son. After receiving his *Miranda* warnings, Martinez admitted to shaking the victim. A six-year-old witness saw Martinez repeatedly strike the child on prior occasions.

¶ 5      On December 17, 2021, the court held a bond hearing where the State filed a verified petition to hold Martinez "no bond." The State proffered the testimony of Dr. Jill Glick, a physician experienced in detection of child abuse, who concluded that the victim suffered subdural hematomas and extensive retinal hemorrhaging caused by extreme violent shaking, with no other possible explanation. The State's petition was granted, and Martinez was held without bond. In its ruling, the court stated, "This is a very very young child . . . and a willingness to commit such an act against a child like this indicates to me a craven behavior, one that I believe threatens, not only his other children, but other people."

¶ 6      On January 16, 2025, after section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)), went into effect, Martinez filed a petition for pretrial release, arguing: 1) the proof is not evident nor the presumption great that he committed a detainable offense; and 2) he does not pose a real and present threat to the safety of any person or persons or the community and does not have a high likelihood of willful flight. The State responded by filing a verified petition for pretrial detention under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022), alleging that Martinez committed detainable offenses of attempt murder, and aggravated battery to a child. The State further alleged that Martinez posed a real and present threat to the community. The State specifically alleged that Martinez shook his four-month-old son and caused "abusive

head trauma/shaken baby syndrome" and admitted as much to the police. The State also proffered that a six-year-old witness saw Martinez repeatedly strike the victim.

¶ 7    At the hearing the following day, defense counsel provided the court with a summary of the facts of the case and the procedural history. He argued that the State's witness was not credible because she was six years old and her allegations were not supported by the physical evidence and other witnesses. He further argued that Martinez's admission was unreliable because it was coerced. Counsel also challenged the "science behind Shaken Baby Syndrome," and contended that the conclusions of the State's proposed expert witness were unreliable because they were contradicted by the defense's proposed expert, Dr. Marvin Miller. Defense counsel argued that Martinez was not a threat to anyone as demonstrated by his coursework activities and accomplishments while in custody over the last three years. Defense counsel requested that Martinez be released on electronic monitoring.

¶ 8    In response, the State argued that the defense's expert was unreliable because he did not believe in the existence of shaken baby syndrome and was not an expert in the field of child abuse pediatrics. Furthermore, the State argued that its expert was more reliable because her conclusions were consistent with the injuries the victim suffered, which were "extensive retinal hemorrhaging * * * [and a] brain injury [that] is similar to the baby getting in a vehicle crash at about 40 miles per hour." The State informed the court that the victim had "irreversible brain trauma" and "will not ever walk or talk." The State also argued that witness credibility was a matter for the trier of fact to determine at trial, and that Martinez's admission was reliable because he stated that the pressure had gotten to him and he picked up the baby and shook him. After informing the court of Martinez's prior felony conviction for gun possession, the State asked the court to continue to detain Martinez, arguing: "We do believe that the proof is evident

and the presumption is great that the defendant committed this offense. We also believe that due to the nature of how violent and how vulnerable this victim was and that there were other children in the home, that the defendant is a threat to the community."

¶ 9    The court ordered Martinez's continued detention, stating:

"Just some comments here about the state of the situation: I think as it stands right now based on the proffered expert witness testimony, it does appear that the proof is evident and the presumption great that the defendant would be convicted of certainly some of the mandatory sentences that are charged here. Not necessarily all of them, but some of them are still non-probationable Class X offenses.

I'm not prejudging the case. It is just based on the material that has been proffered.

The State's proposed expert witness here is Dr. Jill Glick whose curriculum vitae that was submitted shows just basically a career that has been concentrated in child abuse including Shaken Baby Syndrome and other matters. Child abuse seems to be the principal sort of direction that she has taken at her career here at the University of Chicago Hospital.

She has opined that this, in fact, was a case of Shaken Baby Syndrome and obviously the injuries that the child suffered are injuries that are sadly life-changing. And the child appears that it will be permanently disabled and never have any sort of a normal life. It will have a reduced life expectancy as well.

Dr. Miller seems to also be an extraordinarily accomplished physician and has devoted his life as well to pediatrics and other sciences studying children. I know he's not actually -- according to what counsel stated, he's not actually supposed to be the -- or

may not actually be the doctor that would testify in this particular case. But he is the one that was at least at this stage cited in the defendant's motion for release.

But in going over his 16-page curriculum vitae, there were less than ten -- I think it might have been only about seven references to Shaken Baby Syndrome. Sometimes when it was mentioned, it demonstrated that the doctor seems to have a predetermined opinion that it is an inappropriate diagnosis all the time. Not just in this particular case, but as he stated in his report, he doesn't believe and he joins some other medical people saying it does not exist.

He is not going to be the doctor that is going to be called as a witness in this particular case. But for the purposes of trying to evaluate what he is saying in his report to the attorneys for the defendant as opposed to what the State's witness will say, I would have to at this stage at least give far more weight to the State's expert witness over -- that being Dr. Glick over a nontestifying Dr. Miller.

Per the State, there are admissions by the defendant during the course of his interrogation by police officers that he did things that could very well have caused these types of injuries. Also noted in some of those statements is that this child was under a great deal of stress, it appears, while in the sole custody of the defendant, vomiting for an extensive period of time over -- not just like over a couple of hours but over days. The defendant did not take the child to the hospital, call paramedics until the child was in such dire straits that whatever had occurred was irreversible.

There is apparently going to be the testimony of a child who was only six years at the time. Although some of the statements made by the six-year-old aren't going to be backed up by scientific evidence, there is still this statement that the defendant was

5

in fact doing things to the child which could have, in fact, caused the injuries that the child now seems to be suffering from.

In any event, I think the proof is evident and the presumption great that the defendant has committed the offenses as charged. I think at this stage anyway, the defendant's petition for pre-trial release should be denied and will be denied."

¶ 10    On February 25, 2025, Martinez filed a motion for relief in the circuit court. He argued that: (1) the court applied the wrong standard when it stated that he would be convicted of some of the charges instead of applying the clear and convincing standard; (2) the State failed to meet its burden under the clear and convincing standard because the circumstances of his admissions made them unreliable; (3) the State's witness was not credible because she was a six-year-old child and her allegations were contradicted by the physical evidence; (4) the proposed testimony of the State's expert was not credible because it was rebutted by a report submitted by his expert; (5) the State failed to prove that he poses a real and present threat because they only relied on the facts of this case and his 2013 felony conviction for possession of a weapon; (6) the court's finding that the baby was in medical distress was not supported by the evidence; (7) his actions during the weekend leading up to his baby's hospitalization did not indicate that he was a danger or threat; (8) his participation in programming while in custody was evidence showing that he does not pose a real and present threat; (9) the State did not meet its burden of showing that no conditions could mitigate the threat he poses or his willful flight because the State "made no argument at all regarding conditions * * *"; and (10) the court erred because it failed to consider any alternatives to detention.  The court denied Martinez's motion for relief on April 7, 2025.

¶ 11    On April 8, 2025, Martinez filed a Rule 604(h) notice of appeal.

¶ 12                                    ANALYSIS

¶ 13    Martinez did not file a memorandum with this court, choosing instead to stand on the arguments he made in his February 25, 2025, motion for relief. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) (establishing that the motion for relief will serve as the appellant's argument on appeal, and allowing, but not requiring, the appellant to file an additional memorandum in support). Therefore, on appeal, we limit our analysis to the arguments made in his February 25, 2025, motion. The State filed a responsive memorandum with this court arguing that it proved by clear and convincing evidence that Martinez committed the offenses, that he continues to pose a real and present threat, and there were no less restrictive conditions to mitigate Martinez's dangerousness.

¶ 14    Under the Code, a defendant's pretrial release may be denied only for certain charged offenses. 725 ILCS 5/110-6.1, 110-2(a) (West 2022). All defendants are eligible for—and we presume all defendants are entitled to—pretrial release. *Id*. §§ 110-2(a), 110-6.1(e). At any detention hearing, the State and defendant may present evidence "by way of proffer based upon reliable information." *Id*. § 110-6.1(f)(2).

¶ 15    In order to deny a defendant pretrial release, the trial court must find the State proved by clear and convincing evidence that (1) the proof was evident or the presumption great that defendant committed a detainable offense (*id*. § 110-6.1(e)(1)), (2) defendant's pretrial release posed a real and present threat to the safety of any person or persons, or the community based on the specific and articulable facts of the case (*id*. § 110-6.1(e)(2)), and (3) no condition or combination of conditions could mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id*. §§ 110-2(b), (c), 110-6.1(e)(3), (f)).

¶ 16    Where a defendant has previously been ordered detained, the "statute also imposes a

continuing obligation for the court to assess whether continued detention is necessary." *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 21. In cases such as this one, the proper question is whether continued detention is necessary "to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022). In determining whether continued detention is appropriate, "the Code does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing." *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13. Instead, as required by section 110-6.1(i-5), the finding at a continued detention hearing is "a less demanding standard than what is required at the detention hearing, though both are concerned with fundamentally the same question." *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14. Where a trial court finds "that the State presented clear and convincing evidence on all three elements required by section 110-6.1(e), that finding necessarily encompass[es] the continued detention finding required by section 110-6.1(i-5)." *Id.*

¶ 17    This court has previously held that we review the circuit court's determination on continued detention for abuse of discretion. *Casey*, 2024 IL App (3d) 230568, ¶¶ 11-13; *Thomas*, 2024 IL App (1st) 240479, ¶ 14; *People v. Walton*, 2024 IL App (4th) 240541, ¶ 40. Recently, our supreme court recently ruled that *de novo* is the appropriate standard of review to be employed when the parties to a pretrial detention hearing proceed solely by proffer, as occurred in this case. *People v. Morgan*, 2025 IL 130626, ¶ 56. However, *Morgan* involved an initial petition for detention, not a determination of whether continued detention was appropriate, and did not suggest that *Casey* and *Thomas* are no longer good law. Nevertheless, in the wake of *Morgan*, other divisions of this court have applied the *de novo* standard to continued detention determinations (see *People v. Brito*, 2025

IL App (1st) 242601-U; *People v. Salley*, 2025 IL App (1st) 242240-U; *People v. Walker*, 2025 IL App (1st) 242464-U; *People v. Williams*, 2025 IL App (1st) 242594-U; *People v. Wilson*, 2025 IL App (1st) 242454-U). Yet in *People v. Mansoori*, 2025 IL App (1st) 250481-U, another division of this court found that despite the holding in *Morgan*, the abuse of discretion standard used in *Casey* and *Thomas* to review continued detention determinations was the correct standard of review. Martinez has not submitted an appellate memorandum addressing our standard of review, relying instead on the motion for relief he filed in the circuit court. In any case, we need not decide that question because even under the *de novo* standard the circuit court's decision to continue to detain Martinez was not erroneous.

¶ 18    As Martinez was previously ordered detained, we need only consider continued detention was necessary to "to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022). We agree with the State that Martinez's continued detention was necessary to "to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." Id. The evidence proffered by the State showed that Martinez shook his son causing him to suffer shaken baby syndrome. As a result, the victim suffered irreversible head trauma which was made worse because he was not taken to the hospital for several days after the head trauma occurred. Martinez admitted to shaking his son, who was defenseless. A State's witness also stated that she saw Martinez repeatedly strike the victim. In addition, although Martinez has done an extensive amount of coursework at the Department of Corrections, which as the court found he "is to be given credit for," this does not change the fact that Martinez severely injured his own four-month-old son, while the child was in his custody. That Martinez responded to whatever pressure he felt

9

with this type of violence towards his own child makes him not only a danger to his child but to the community. As there are other children in the home, Martinez "should still be considered a danger" to the victim and his other children. Moreover, any model behavior in jail does not reflect an environment that is uncontrolled and where children are present. We are aware that the court did not specifically discuss options other than detainment in this case. However, placing Martinez on electronic monitoring, where he would arguably have access to children, would not be a suitable alternative to incarceration based on the specific facts articulated by the trial court in this case. Therefore, we cannot say that the trial court erred in ordering Martinez's continued detention.

¶ 19    For the foregoing reasons, we affirm the circuit court's order continuing Martinez's pretrial detention.

¶ 20    Affirmed.